MARS, INCORPORATED, Plaintiff,

v.

NIPPON CONLUX KABUSHIKI–KAISHA, Defendant.

Civ. A. No. 92–578–RRM.

United States District Court,
D. Delaware.

Sept. 28, 1993.

Charles S. Crompton, Jr., William J. Marsden, Jr., Potter Anderson & Corroon, Wilmington, DE, John B. Pegram, Peter H. Priest, Wayne S. Breyer, Jeffrey M. Weinick, Davis Hoxie Faithfull & Hapgood, New York City, for plaintiff.

Robert W. Whetzel, Allen M. Terrell, Jr., Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, Richard H. Zaitlen, David M. Simon, Steven Sereboff, Spensley, Horn, Jubas & Lubitz, Los Angeles, CA, for defendant.

MEMORANDUM OPINION

McKELVIE, District Judge.

This is a patent infringement case. The plaintiff, Mars, Incorporated ("Mars"), is a Delaware corporation. The defendant, Kabushiki–Kaisha Nippon Conlux ("Nippon Conlux"), is a Japanese company and the parent of Conlux USA Corporation ("Conlux USA"). In its complaint, Mars alleges Nippon Conlux is infringing and inducing others to infringe claims 2, 3, and 60 of Mars' U.S. Patent No. 3,918,565 ("the '565 patent"), which relates to a method and apparatus for

coin selection for electronic coin changers in vending machines. This is the Court's decision on the defendant's motions for partial summary judgment.

## 1. FACTS.

### A. *Related Litigation*

In 1990, Mars filed a patent infringement action in this Court against Conlux USA, alleging Conlux USA was infringing Mars '565 patent by using, selling, and importing the Conlux Premier Coin Changer. The Coin Changer incorporates the accused device, the E920 coin discriminator, which is manufactured in Japan by Nippon Conlux.

In May of 1992, following a trial on the liability issues, a jury found Conlux USA had infringed the '565 patent and that the patent was not invalid or unenforceable. Included in the jury's verdict were findings that Conlux USA had infringed claims 1, 2, 3 and 60 of the '565 patent. Those claims read as follows:

1. A method of examining coins with respect to authenticity including the steps of examining a first unidentified coin by making a measurement with respect to a first characteristic of the coin and thereby producing a first electrical signal having a quality with a first value indicative of the first characteristic of the first coin, comparing the first value with a stored value of the same quality in a programmable memory, and producing a signal indicative of the acceptability of the first coin with respect to the first characteristic when the first value is within predetermined limits for acceptable coins of a given denomination of the stored value.

2. The method of claim 1 further including the steps of examining a second, representative coin and thereby producing an electrical signal having a second value of the same quality indicative of the first characteristic of the second coin, causing the second value to be stored in the programmable memory, and subsequently conducting the other steps with respect to the first coin.

3. The method of claim 2 wherein the step of examining the first coin includes the substep of subjecting the first coin to an electromagnetic field, wherein the value of the first quality is indicative of the degree of interaction of the coin with the field.

60. A method of examining coins with respect to authenticity including the steps of examining a disc of known characteristics and causing a value to be stored in a programmable memory as a result of the examination, examining an unidentified coin at a later time and thereby producing a first electrical signal having a quality with a first value indicative of a first characteristic of the first coin, comparing the first value with the value stored in the programmable memory, and producing a signal indicative of the acceptability of the first coin with respect to the first characteristic when the first value is within predetermined limits for acceptable coins of a given denomination, the limits being dependent at least in part upon the stored value.

Mars and Conlux USA tried the damages issues to the same jury in December of 1992, and the jury found Conlux USA liable for $545,562 in damages. The jury also found Conlux USA had not willfully infringed Mars' patent. Thereafter, the Court denied Conlux USA's motion for a new trial and Mars' motion for a partial new trial on damages, and granted Mars' motion to amend the judgment to provide for prejudgment interest. *See Mars, Inc. v. Conlux USA Corp.*, 818 F.Supp. 707 (D.Del.1993). Mars has taken an appeal from the verdict and that decision; Conlux has not.

### B. *Claims in this Action and the Pending Motions for Summary Judgment*

Mars filed this action against Nippon Conlux on October 2, 1992, between the trials on the liability and damage issues in the Conlux USA litigation. Mars initially joined three causes of action in its complaint. In one cause of action, it alleged certain officers and directors of Nippon Conlux were liable to it for damages as they had acted in concert with and induced Conlux USA's infringement of the '565 patent. On January 28, 1993, the parties stipulated to dismiss those claims.

In a second cause of action, Mars sought damages from Nippon Conlux based on its alleged unfair competition in infringing Mars' Japanese patent No. 1,557,883, Mars' counterpart to the '565 patent. By a decision and order dated June 10, 1993, the Court declined to exercise jurisdiction over that cause of action. *Mars, Incorporated v. Nippon Conlux Kabushiki–Kaisha*, 825 F.Supp. 73 (D.Del.1993).

In the third cause of action, Mars sought damages from Nippon Conlux, alleging that in manufacturing the Premier Coin Changer in Japan and shipping it into the U.S., Nippon Conlux was infringing the '565 patent and was inducing others to infringe it.

Nippon Conlux has moved for a summary judgment on these remaining claims in the third cause of action.

## 2. DISCUSSION.

### A. *Direct Infringement*

■ In its claim for direct infringement, Mars has not argued that Nippon Conlux has violated 35 U.S.C. § 271(a), which speaks to liability for infringement by making, using or selling a patented invention. Instead, Mars contends Nippon Conlux has violated 35 U.S.C. § 271(g), which reads in relevant part as follows:

> Whoever without authority imports into the United States ... a product which is made by a process patented in the United States shall be liable as an infringer.

Nippon Conlux concedes for the purpose of this motion that it imports the E920 into the United States. It also concedes that the jury has found that the E920 infringes the '565 patent. It argues that it has not, however, violated this statute as Mars has patented an apparatus for selecting coins and not a process for making that apparatus. As the statute is directed to products made by an infringing process, and as there is no proof Nippon Conlux manufactures the E920 by an infringing process, Nippon Conlux contends it is entitled to a summary judgment that it did not violate 35 U.S.C. § 271(g) in importing or selling the E920.

Mars' patent describes an apparatus that incorporates a process for analyzing coins.

The apparatus is programmed to recognize certain coins through a process of measuring signals on a test or standard coin and storing those signals so that they can be used to look for the same quality in coins placed in the device by customers. Mars contends that the act of programming the machine is part of making the machine, and that the machine is therefore made by a patented process within the meaning of § 271(g).

While it may be that Mars' patent describes a process or processes by which its device works, it does not describe a process for manufacturing that device. Nippon Conlux's device may infringe the patent, but there is no proof it manufactures that device by a process that infringes a Mars patent. The Court therefore will grant summary judgment for Nippon Conlux on this claim.

### B. *Inducing Infringement*

■ Mars alleges that Nippon Conlux violated 35 U.S.C. § 271(b) by inducing Conlux USA to infringe the '565 patent. Nippon Conlux argues that this claim is precluded by the jury verdict in the Conlux USA case, because it would be inconsistent to find simultaneously that Nippon Conlux induced infringement and that Conlux USA's infringement was not willful.

Nippon Conlux claims, and Mars does not dispute, that the verdict in the Conlux USA case reflects the mental state of both Conlux USA and Nippon Conlux. Nippon Conlux also argues that allegations of "inducement" and "willfulness" require proof of the same mental state. Mars disagrees with this argument.

■ Applying collateral estoppel is not appropriate here even if the scienter for willfulness is the same as the scienter for inducement. The burden of proof in this case is easier to meet than the burden of proof that Mars failed to meet in the Conlux USA case. In the proceeding against Conlux USA, Mars failed to prove willfulness by clear and convincing evidence. Here, Mars need only prove inducement by a preponderance of the evidence. The case is therefore similar to *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *Grogan* dis-

cussed the effect that a successful common-law fraud suit had on later allegations of fraud in a bankruptcy proceeding. The petitioners had won a judgment in a case where they proved by a preponderance of the evidence that the respondent had committed fraud. After the judgment was filed, the respondent sought the protection of the bankruptcy laws. Petitioners asserted that respondent's fraud prevented his debts from being discharged under 11 U.S.C. § 523(a). Petitioners claimed that they should be granted judgment as a matter of law under the doctrine of collateral estoppel. Respondent replied that fraud under § 523(a) required proof by clear and convincing evidence, and that the differing burden of proof precluded the use of collateral estoppel. The Supreme Court agreed with respondent's argument that a changing burden of proof would preclude application of collateral estoppel, although the Court eventually decided that the necessary burden of proof under § 523(a) was the same as the common law fraud charge previously proved by the petitioners, and that applying collateral estoppel was appropriate. *Grogan, supra.*

The *Grogan* case shows that collateral estoppel is inapplicable here. The Supreme Court held that there is a substantial difference between the "preponderance" and "clear and convincing" standards. The Court also held that a party cannot rely on a prior judgment if it is faced with a heavier burden of proof. *Accord,* Restatement (2nd) of Judgments, § 28(4) (cited with approval in *Grogan*). Although Mars previously was unable to prove its case by clear and convincing evidence, one cannot be sure that they will be unable to prove their case under the lighter preponderance standard. Mars may fail again, but the doctrine of collateral estoppel should not be applied to prevent them from setting forth their evidence at trial.

The "disparate burdens of proof foreclose application of the issue preclusion doctrine." *In re Braen,* 900 F.2d 621, 624 (3rd Cir.1990). The Court therefore will deny Nippon Conlux' motion for partial summary judgment on the issue of inducing infringement.

The Court will enter an Order in accordance with this Opinion.