**STEIN ASSOCIATES, INC., Appellant,**

v.

**HEAT AND CONTROL, INC., Appellee.**

**Appeal No. 84–954.**

United States Court of Appeals, Federal Circuit.

Nov. 16, 1984.

Richard J. Egan, Baldwin, Egan, Walling & Fetzer, Cleveland, Ohio, argued for appellant. With him on the brief were Leslie W. Jacobs and James B. Niehaus, Thompson, Hine & Flory, Cleveland, Ohio.

Donald N. MacIntosh, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., argued for appellee. With him on the brief was Elmer S. Albritton and Debra E. Dahl, San Francisco, Cal.

Before MARKEY, Chief Judge, and KASHIWA and NEWMAN, Circuit Judges.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Northern District of California (district court) denying Stein Associates' (Stein's) motion for preliminary injunction. We *affirm.*

### Background

In 1982, Heat and Control, Inc., (H & C) became aware that Stein was offering to sell its Counterflow Oven (CFO) to a British company, G.W. Padley Poultry Ltd. (Padley) and had installed a pilot CFO at Padley's factory in Lincolnshire, Great Britain. H & C was advised by its British patent counsel that the pilot oven infringed H & C's two British patents. Accordingly, a writ of infringement was issued against Padley on March 31, 1983. When Padley did not then actually purchase the CFO oven from Stein, the writ of infringement was withdrawn.

Having learned that Stein was selling its CFO oven through a British distributor, RHM Ingredient Supplies Ltd. (RHM), and believing that Stein and RHM intended to continue that activity in Great Britain, H & C initiated court proceedings against Stein and RHM on August 5, 1983 for infringement of H & C's two British patents.

In the interim, on July 6, 1983, Stein filed an action in Toledo, Ohio, for a declaratory judgment that H & C's U.S. patents are invalid and not infringed, that H & C unfairly competed with Stein, and that H & C violated Sections 1 and 2 of the Sherman Anti-trust Act. H & C counterclaimed for infringement of its United States patents.

H & C's United States patents relate to apparatus and method for cooking solid food products in a continuously circulating steam laden atmosphere. The patents, one for the apparatus and one for the method, resulted from a parent application filed in the Patent and Trademark Office (PTO) on February 2, 1973. H & C filed a British application on May 9, 1973, claiming priority in view of the United States parent application under Article 4 of the Paris Convention.

On September 12, 1983, H & C moved to transfer the Toledo action to San Francisco, California. Stein reacted by moving in the Ohio district court for summary judgment that H & C's United States patents are invalid under 35 U.S.C. § 102(b), because of an alleged offer to sell more than one year before the filing date of H & C's parent application, and for an order enjoining H & C's enforcement of its British patents against Stein and RHM. Stein filed an affidavit of Richard Egan (one of Stein's attorneys) and an affidavit of Arthur Nilsen, a retired H & C employee.

On November 8, 1983, the Ohio district court granted H & C's motion to transfer, leaving the decision on Stein's motions to the district court in California. Stein's appeal of that action to this court (Appeal No. 84–654) was dismissed on December 21, 1983. Stein then noticed its motions for

hearing relying on the same record (the Egan and Nilsen affidavits).

Stein's affidavits said that the oven and process originally claimed in the parent application were reduced to practice on September 16, 1971, when H & C tested an experimental oven for Kraft Foods, a potential customer, and that that oven was offered for sale to Kraft on January 2, 1972, more than one year before the February 2, 1973 filing date of the parent application.

H & C relied on testimony of inventors Andrew Caridis and Clark Benson, and of Nilsen, given at depositions on October 9, 10 and 11, 1983. That testimony was that the oven tested for Kraft Foods on September 16, 1971 was not that defined in the claims of the issued patents, and that the inventions claimed in the patents were not actually reduced to practice until after the critical date of February 2, 1972.

Specifically referring to the patent claims, Caridis, Benson, and Nilsen testified that the experimental oven tested on September 16, 1971 did not have means for excluding outside air from the cooking chamber and did not have means for measuring and regulating the moisture content of the circulating process vapor.

At a March 2, 1984 hearing, the district court denied Stein's motion for partial summary judgment because Stein failed to establish that there had been an invalidating offer for sale and because issues of material fact were present. The court denied Stein's motion to preliminarily enjoin H & C's effort to enforce its British patents in Great Britain.

### Issue

Did the district court abuse its discretion in denying a preliminary injunction?

### OPINION

#### (1) The Paris Convention

■ The denial of Stein's motion for partial summary judgment is not appealable, *Switzerland and Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct.

193, 17 L.Ed.2d 23 (1966), and has not been appealed. That motion, however, serves as Stein's intended basis for its appeal from denial of its motion for an injunction.

Stein set forth to establish by way of summary judgment that H & C's United States patents are invalid under § 102(b), in the mistaken belief that H & C's British patents would thereupon lose their priority dates under the Paris Convention. Stein argues that without those priority dates the British patents are invalid under British law and that the district court should enjoin enforcement of those "invalid" British patents. Stein thus proceeded on a theory founded in twisted logic.

■ Stein employed the novel technique of attempting to show that H & C's United States patents are "void ab initio" by applying two of the thirteen claims in the parent application as *originally* filed to the oven allegedly on sale before the critical date. Those two claims, however, were amended during prosecution and are not found in the issued patents. Absent inequitable conduct in prosecution of the application, a patent is invalid under § 102(b) only if every element in every claim in the *issued* patent reads on the device offered for sale. 35 U.S.C. § 102(b); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 838, 221 USPQ 561, 566 (Fed. Cir.1984); *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702–703, 218 USPQ 965, 967 (Fed.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). Stein cites only *In re Theis*, 610 F.2d 786, 204 USPQ 188 (CCPA 1979). That case was an *ex parte* appeal from a PTO rejection, and did not involve the validity of an issued patent.

■ Just as a patentee cannot prevail by proving infringement of claims originally filed but not in its patent, a patent challenger cannot prevail by proving invalidity of those claims. *Thomas & Betts Corp. v. Litton Systems, Inc.*, 720 F.2d 1572, 1579–80, 220 USPQ 1, 6 (Fed.Cir.1983).

Stein's purpose in attempting to show that the oven set forth in originally filed

claims had been on sale was to create a basis for showing that H & C's parent application was not a "regular national filing" under Article 4 of the Paris Convention, and that H & C could not therefore claim for its British patents the benefit of the filing date of its parent application in the PTO. Whether H & C may claim that benefit is a matter for determination by the British court before which the claim is asserted. To forestall efforts similar to Stein's, however, the flaw in its approach to the Paris Convention should be made clear.

■ Stein's attempt to convince this court that once a United States patent falls, all corresponding foreign patents lose their priority dates is totally without merit and is expressly refuted by the Paris Convention itself. Article 4 bis of the Paris Convention provides:

(1) Patents applied for in the various countries of the Union by nationals of countries of the Union shall be independent of patents obtained for the same invention in other countries, whether members of the Union or not.

(2) The foregoing provision is to be understood in an unrestricted sense, in particular, in the sense that patents applied for in the period of priority are independent, both as regards the grounds for nullity and forfeiture, and as regards their normal duration.

Article 4(A)(3) of the Paris Convention defines a "regular national filing":

(3) By a regular national filing is meant any filing that is adequate to establish the date on which the application was filed in the country concerned, whatever may be the outcome of the application.

The key language in Article 4(A)(3) is "any filing that is adequate to establish the date on which the application was filed in the country concerned" and "whatever may be the outcome of the application."

35 U.S.C. § 111 defines the requirements for establishing a filing date for a patent application in the United States:

Application for patent shall be made, or authorized to be made, by the inventor, except as otherwise provided in this title, in writing to the Commissioner. Such application shall include (1) a specification as prescribed by section 112 of this title; (2) a drawing as prescribed by section 113 of this title; and (3) an oath by the applicant as prescribed by section 115 of this title. The application must be accompanied by the fee required by law. The fee and oath may be submitted after the specification and any required drawing are submitted, within such period and under such conditions, including the payment of a surcharge, as may be prescribed by the Commissioner. Upon failure to submit the fee and oath within such prescribed period, the application shall be regarded as abandoned, unless it is shown to the satisfaction of the Commissioner that the delay in submitting the fee and oath was unavoidable. The filing date of an application shall be the date on which the specification and any required drawing are received in the Patent and Trademark Office.

■ It would defeat the purpose of the Paris Convention if inventors filing applications in the PTO were required to prove that their original claims were patentable before establishing a filing date entitling them to claim a right of priority for their corresponding foreign applications.

■ Repeatedly referring to "invalid filing," Stein would construe 35 U.S.C. § 111 as including the conditions of patentability set forth in § 102 and § 103, a construction inconsistent with the statutory scheme. Whether the claims of a United States application as originally filed meet all patentability requirements is determined during prosecution. That determination is the "outcome" of the application and is not a prerequisite to the establishment of a filing date under § 111, nor is that determination a condition precedent to the creation of a "regular national filing" under the Paris Convention.

Stein cites dicta in *Eli Lilly & Co. v. Brenner*, 248 F.Supp. 402, 147 USPQ 442

(D.D.C.1965), *rev'd,* 375 F.2d 599, 153 USPQ 95 (D.C.Cir.1967), but the court was there dealing with an entirely different issue, namely, whether a United States patent claiming priority based on an earlier filed foreign application acts as a § 102(e) reference as of its actual United States filing date or as of the foreign priority date. The citation aids H & C, not Stein, for the court specifically held that a right of priority in the United States arose when the requirements of the foreign country were met.

■ Stein cites the provision in 35 U.S.C. § 119 for determination of the § 102(a) and (b) bars as of the United States filing date. However, § 119 deals only with an application filed in the PTO and claiming priority based on a foreign application. It has no relation whatever to the determination by a British court under British law on whether H & C is entitled to claim for its British patents the priority benefit of the United States filing date of its parent application.

■ Stein's notion that it could establish a basis for its requested injunction by proving invalidity of H & C's United States patent is in direct conflict with the total independence of the patents of signatory countries, as set forth in Article 4 bis of the Paris Convention quoted above.

## (2) *Preliminary Injunction*

■ On appeal, "one denied a preliminary injunction must meet the burden of showing that the district court abused its discretion, committed an error of law, or seriously misjudged the evidence." *Smith Int'l., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed.Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Stein has not carried that burden.

■ The district court has the discretionary power to enjoin a party from pursuing litigation before a foreign tribunal but can exercise that power only if the parties and issues are the same, and resolution of the domestic action will dispose of the foreign action. *See Canadian Filters (Har-*

*wich) Ltd. v. Lear-Siegler, Inc.,* 412 F.2d 577, 578, 162 USPQ 65 (1st Cir.1969).

■ Here, the issues are not the same, one action involving United States patents and the other involving British patents.

■ Further, resolution of the domestic action will not dispose of the British action. Only a British court, applying British law, can determine validity and infringement of British patents. British law being different from our own, and British and United States courts being independent of each other, resolution of the question of whether the United States patents are valid could have no binding effect on the British court's decision.

In each of the cases relied on by Stein, the court *refused* to enjoin a party from pursuing foreign litigation involving that party's foreign patents. *Id; Sperry Rand Corp. v. Sunbeam Corp.,* 285 F.2d 542, 544–45, 128 USPQ 65, 67 (7th Cir.1960); *Medtronic, Inc. v. Catalyst Research Corp.,* 518 F.Supp. 946, 954–55, 957 (D.Minn.1981), *aff'd,* 664 F.2d 660 (8th Cir. 1981) (the court enjoined the defendant from seeking injunctive relief, but not from pursuing a foreign patent action seeking damages); *Western Electric Co. v. Milgo Electronic Corp.,* 450 F.Supp. 835, 837, 842, 200 USPQ 30, 32, 36 (S.D.Fla.1978).

In light of the foregoing, it is not necessary to explore in this case whether Stein has shown a likelihood of success, or irreparable harm, or whether harm to H & C or to the public interest should preclude a grant of the injunction sought.

The district court properly exercised its discretion in denying Stein's motion for preliminary injunction.

AFFIRMED.