**MARS INCORPORATED, Plaintiff,**

v.

**NIPPON CONLUX KABUSHIKI-KAISHA, Defendant.**

**Civ. A. No. 92–578–RRM.**

United States District Court,
D. Delaware.

June 10, 1993.

---

as standard sales activity and, thus, not rising to the level of sufficient prefatory activity in the United States.

74

Charles S. Crompton, Jr., and William J. Marsden, Jr., Potter Anderson & Corroon, Wilmington, DE, John B. Pegram, Peter H. Priest, Wayne S. Breyer, and Jeffrey M. Weinick, Davis, Hoxie, Faithfull & Hapgood, New York City, for plaintiff.

Thomas A. Beck, Robert W. Whetzel, and David L. Finger, Richards, Layton & Finger, Wilmington, DE, Richard H. Zaitlen, David M. Simon, and Steven Sereboff, Spensley, Horn, Jubas & Lubitz, Los Angeles, CA, for defendant.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a patent infringement case. The plaintiff is Mars Incorporated ("Mars"), a Delaware corporation. The defendant is Kabushiki–Kaisha Nippon Conlux ("Nippon Conlux"), a Japanese company and the parent of Conlux USA Corporation ("Conlux USA"). Mars alleges Nippon Conlux is infringing claims 2, 3, and 60 of Mars' U.S. Patent No. 3,918,565 ("the '565 patent") and the sole claim of Mars' Japanese counterpart patent No. 1,557,883 ("the Japanese patent"). Both of these patents relate to technology for electronic coin changers in vending machines.

Nippon Conlux has moved to dismiss Mars' claim that Nippon Conlux is infringing Mars' Japanese patent. This is the Court's decision on the motion.

## I. DISCUSSION

### A. Related Litigation

In 1990, Mars filed a patent infringement action in this Court against Conlux USA, alleging infringement of its '565 patent. *Mars v. Conlux USA*, C.A. No. 90–751–RRM. In May of 1992, following a trial on the liability issues, a jury found Conlux USA had infringed Mars' patent and that the patent was not invalid or unenforceable. The parties tried the damages issues to the same jury in December of 1992, and the jury found Conlux USA liable for $545,562 in damages. The jury also found Conlux USA had not wilfully infringed Mars' patent.

On October 2, 1992, between the liability and damages phase of the Conlux USA litigation, Mars filed this action against Nippon Conlux.

### B. Nippon Conlux's Motion to Dismiss Mars' Claim Alleging Infringement of its Japanese Patent

Nippon Conlux has moved on three grounds to dismiss Mars' claim alleging infringement of its Japanese patent: (1) lack of subject matter jurisdiction; (2) comity; and, (3) forum non conveniens. For the reasons that follow, the Court will assume without deciding that it has jurisdiction to hear Mars' claim, but will decline to exercise that jurisdiction pursuant to its authority to decline to exercise supplemental jurisdiction and for reasons of comity. Consequently, the Court will grant Nippon Conlux's motion and will not address Nippon Conlux's forum non conveniens arguments.

Mars asserts the Court has jurisdiction over Mars' Japanese patent infringement claim pursuant to 28 U.S.C. § 1338(b). Mars argues that because foreign patent infringement constitutes a business tort, the Court should consider Mars' claim as one of "unfair competition," and exercise jurisdiction under 28 U.S.C. § 1338(b). Section 1338(b) provides:

The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

In support of its argument that a foreign patent infringement claim is an "unfair competition" claim for the purposes of § 1338(b), Mars points to the broad definitions of unfair competition in the 1992 Tentative Draft of the Restatement (Third) of the Law of Unfair Competition, and in § 337 of the Tariff Act of 1930, 19 U.S.C. § 1337. Mars also asserts its claim that Nippon Conlux infringes the '565 is a substantial patent claim and that the Japanese patent claim is related to that claim.

■ For the following reasons, the Court will decline to exercise jurisdiction over Mars' claim under § 1338(b). First, Mars has cited no authority for the proposition that § 1338(b) provides a jurisdictional basis for claims of foreign patent infringement. Second, as a matter of logic § 1338(b) should not be read to confer jurisdiction on federal courts to hear claims of foreign patent infringement. Section 1338(b) provides for pendent jurisdiction of unfair competition claims that are related to substantial claims under the copyright, patent, or trademark laws. By implication, claims under the patent laws, whether they are claims under foreign or domestic patent laws, are distinct from unfair competition claims for purposes of § 1338(b). In arguing that foreign patent infringement claims can be considered unfair competition claims, Mars blurs the distinction established in the statute and conflates patent infringement claims with unfair competition claims. The Court cannot entertain jurisdiction over Mars' foreign patent infringement claim merely because Mars has relabeled its claim as one of "unfair competition." *See Lewis Parham Corp. v. Clairol Inc.,* No. 77 Civ. 6341–CSH, slip op. at 2 (S.D.N.Y. April 23, 1980), *aff'd,* 661 F.2d 909 (2nd Cir. 1981) ("[c]laims of foreign patent infringement do not fall within the express language of § 1338(b)").

■ Mars also argues the Court has supplemental jurisdiction over its Japanese patent infringement claim pursuant to 28 U.S.C. § 1367(a). Section 1367(a) provides in pertinent part:

[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In support of its argument that § 1367(a) confers jurisdiction on this Court to hear Mars' Japanese patent infringement claim, Mars notes that § 1367(a) codifies the scope of supplemental jurisdiction articulated by the United States Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and that the principles of *Gibbs* were applied to assert jurisdiction over a claim of foreign patent infringement in *Ortman v. Stanray,* 163 U.S.P.Q. (BNA) 331 (N.D.Ill.1969), *rev'd on other grounds;* 437 F.2d 231 (7th Cir.1971). The Court in *Ortman* concluded that it had ancillary jurisdiction over foreign patent infringement claims and that it should exercise that power because "considerations of convenience to the parties herein which would be served by litigating these issues in one forum outweigh the difficulties that are anticipated from the task of applying the relevant foreign laws involved." *Id.* at 334.

In light of the decision in *Ortman* and the absence of authority suggesting conclusively that the Court lacks the power to hear Mars' claim, the Court will assume without deciding that it could exercise jurisdiction under 28 U.S.C. § 1367(a) to hear Mars' Japanese patent infringement claim. Nevertheless, for the following reasons the Court will decline to exercise jurisdiction over Mars' claim.

Section 1367(c) authorizes courts to decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction....

The Court finds that both of these exceptions apply to this case. First, although

Mars' claim of infringement of a Japanese patent does not raise any issues of state law, it does raise novel and complex issues of Japanese law. For example, the parties disagree as to the extent to which Japanese law allows discovery, and the Court anticipates disagreements among the parties as to the substance of Japanese patent law. As the principles embodied in subsection (c)(1) are implicated by complex issues of foreign as well as state law, subsection (c)(1) suggests that the Court should decline to exercise jurisdiction over Mars' Japanese patent claim.

Second, it appears Mars' claims relating to the Japanese patent would substantially predominate in this litigation over its claims relating to the U.S. patent. For example, the discovery taken and obtained in *Mars v. Conlux, U.S.A.* should considerably reduce the scope of discovery necessary to resolve Mars' claim that Nippon Conlux is infringing the same U.S. patent. Correspondingly, if the Court denies the motion to dismiss, a significant proportion of the time and effort in discovery in this case would be directed to the issues raised by the Japanese patent claim. Furthermore, Mars' Japanese patent claim raises difficult questions of Japanese law that would consume a substantial proportion of the time necessary to resolve the legal issues in this case. This task would be complicated by having to agree on the proper translation of laws, documents and other communications.

In addition, principles of comity suggest this Court should decline to exercise jurisdiction over Mars' claim. Most courts that have considered the issue of whether to exercise jurisdiction over a claim of infringement of a foreign patent have refused to do so based upon reasons of comity. *See, e.g., Packard Instrument Co., Inc. v. Beckman Instruments, Inc.,* 346 F.Supp. 408 (N.D.Ill.1972); *Goldberg v. Cordis Corp.,* 203 U.S.P.Q. (BNA) 717 (N.D.Ill.1976). Mars seeks to distinguish *Packard* and *Goldberg* by arguing that the courts in those cases refused to exercise jurisdiction over foreign patent infringement claims because the defendant had asserted the defense of invalidity and the courts were unwilling to make a determina-

tion as to the validity of a foreign patent. Mars argues that because in Japan the validity of a patent cannot be challenged in court, Nippon Conlux cannot raise invalidity as a defense in this action, and, therefore, the comity concerns discussed in *Packard* and *Goldberg* are not implicated in this case.

Even assuming Mars is correct that Japanese law would prohibit Nippon Conlux from asserting the invalidity of Mars' patent as a defense to Mars' claim, Mars' claim involves the Court in deciding whether a Japanese company is prohibited under Japanese law from making or selling its products in Japan. The Court finds, therefore, that the principles underlying the notion of comity are directly implicated by Mars' claim:

> The rights and liabilities of United States citizens who compete with foreign nationals in their home countries are ordinarily to be determined by the appropriate foreign law. (citations omitted). This fundamental principle ... is based upon practical considerations such as the difficulty of obtaining extraterritorial enforcement of domestic law, as well as on considerations of international comity and respect for national integrity.

*Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 639 (2nd Cir.1956), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Furthermore, the Federal Circuit has noted that only a foreign country can determine the validity and *infringement* of the patents it issues. *See Stein Associates, Inc. v. Herald Control, Inc.,* 748 F.2d 653, 658 (Fed.Cir. 1984).

The Court will enter an Order in accordance with this Opinion.