**MARS INCORPORATED,**
**Plaintiff–Appellant,**

v.

**KABUSHIKI–KAISHA NIPPON CONLUX, Defendant–Appellee.**

No. 93–1507.

United States Court of Appeals, Federal Circuit.

April 29, 1994.

John B. Pegram, Davis, Hoxie, Faithful & Hapgood, of New York City, argued for plaintiff-appellant. With him on the brief

were Peter H. Priest, Wayne S. Breyer and Jeffrey M. Weinick.

Richard H. Zaitlen, Spensley, Horn, Jubas & Lubitz, of Los Angeles, CA, argued for defendant-appellee. With him on the brief were David M. Simon and Steven C. Sereboff.

Before RICH and LOURIE, Circuit Judges, and MILLS,* District Judge.

LOURIE, Circuit Judge.

Mars Incorporated appeals from a judgment of the United States District Court for the District of Delaware granting the motion of Nippon Conlux Kabushiki–Kaisha to dismiss for lack of subject matter jurisdiction Mars' claim against Nippon Conlux alleging infringement of Mars' Japanese patent. *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha,* 825 F.Supp. 73, 27 USPQ2d 1951 (D.Del. 1993) (memorandum opinion). Because the district court has neither original nor supplemental jurisdiction over Mars' claim, we affirm.

## BACKGROUND

On October 2, 1992, Mars filed an action in the Delaware district court against Nippon Conlux, a company organized and operating under the laws of Japan, and certain officers and directors of Conlux U.S.A. Corporation, a U.S. subsidiary of Nippon Conlux. The complaint contained three separate causes of action relating to alleged infringement of Mars' U.S. Patent 3,918,565 and Japanese Patent 1557883, which patents are directed to electronic coin discriminators with programmable memories. The first two counts of the complaint charged Nippon Conlux and the individual defendants, respectively, with direct infringement and inducement of infringement of claims 2, 3, and 60 of the U.S. patent. The third count accused Nippon Conlux of infringement of the sole claim of the Japanese patent. Mars averred in its complaint that the district court possessed subject matter jurisdiction over the two counts alleging infringement of the U.S. pat-

---

* Honorable Richard Mills, District Judge, United States District Court for the Central District of Illinois, sitting by designation.

ent under 28 U.S.C. §§ 1331, 1338(a) (1988), and "ancillary, pendant and supplemental jurisdiction" over the third count alleging infringement of the Japanese patent under 28 U.S.C. §§ 1338(b) (1988), 1367 (Supp. IV 1992).

Nippon Conlux moved to dismiss the third count based on a lack of subject matter jurisdiction, principles of international comity, and the doctrine of *forum non conveniens.* In granting the motion to dismiss, the court "assum[ed] without deciding" that it had subject matter jurisdiction over the disputed claim, but "declin[ed] to exercise that jurisdiction pursuant to its authority to decline to exercise supplemental jurisdiction and for reasons of comity." 825 F.Supp. at 74, 27 USPQ2d at 1951. On July 1, 1993, the district court entered a final judgment pursuant to Fed.R.Civ.P. 54(b), dismissing Mars' claim of infringement of the Japanese patent.[1] Mars now appeals.

## DISCUSSION

### I. Choice of Law

 When an issue before us pertains to a matter not unique to our exclusive appellate jurisdiction, our established practice has been to defer to the discernable law of the regional circuit in which the district court sits. *See Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984) (procedural matters); *U.S. Philips Corp. v. Windmere Corp.,* 861 F.2d 695, 702, 8 USPQ2d 1885, 1890 (Fed. Cir.1988) (nonpatent claims), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989). Such deference, however, is inappropriate when an issue involves substantive questions coming exclusively within our jurisdiction, *see Chrysler Motors Corp. v. Auto Body Panels of Ohio Inc.,* 908 F.2d 951, 953, 15 USPQ2d 1469, 1470 (Fed.Cir.1990), the disposition of which would have "a direct

bearing on the outcome." *Panduit,* 744 F.2d at 1575 n. 14, 223 USPQ at 471 n. 14.

 In this case, review of the propriety of the district court's dismissal for lack of jurisdiction necessarily requires consideration of facts and resolution of legal principles that "bear[ ] an essential relationship to matters committed to our exclusive control." *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 858–59, 20 USPQ2d 1252, 1259 (Fed.Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992). The issue whether the district court had jurisdiction to hear Mars' claim of Japanese patent infringement "is of importance to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court." *Minnesota Mining & Mfg. Co. v. Norton Co.,* 929 F.2d 670, 672, 18 USPQ2d 1302, 1304 (Fed. Cir.1991). Thus, we are not bound by the law of the Third Circuit in deciding this case. Notwithstanding that conclusion, "[w]e may, of course, look for guidance in the decisions of the [Third Circuit], as well as those of other courts." *Woodard v. Sage Prods.,* 818 F.2d 841, 844, 2 USPQ2d 1649, 1651 (Fed. Cir.1987) (in banc) (citation omitted).

 Whether the trial court properly granted the motion to dismiss for lack of jurisdiction is a question of law. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). We address that question *de novo. See Zumerling v. Marsh,* 783 F.2d 1032, 1034 (Fed.Cir.1986); *Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.,* 755 F.2d 1559, 1562, 225 USPQ 121, 123 (Fed.Cir.), *cert. denied,* 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985); *Speedco, Inc. v. Estes,* 853 F.2d 909, 911, 7 USPQ2d 1637, 1639–40 (Fed.Cir.1988). Moreover, when a party has moved to dismiss for lack of jurisdiction, we consider the facts alleged in the complaint as being correct. If these facts reveal any reasonable basis on which the non-movant might prevail, the motion

---

1. Mars' claim against the individual defendants was dismissed with prejudice by stipulation on January 28, 1993. Nippon Conlux moved for partial summary judgment on Mars' claim against Nippon Conlux alleging direct and induced infringement of the U.S. patent. The district court, in a separate opinion, granted summary judgment in favor of Nippon Conlux on the issue of direct infringement and denied Nippon Conlux's motion for summary judgment on the issue of induced infringement. *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha,* Civil Action No. 92–578–RRM, 1993 WL 383571 (D.Del. Sept. 28, 1993) (memorandum opinion).

will be denied. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

■ In considering the jurisdictional issues presented in this appeal, we are guided by the "fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). *See also Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976) (it is a "well-established principle that federal courts ... are courts of limited jurisdiction marked out by Congress"). A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936).

## II. Original Jurisdiction

Mars maintains that the district court has original jurisdiction over the Japanese patent infringement claim pursuant to 28 U.S.C. § 1338(b),[2] which "is a jurisdictional statute, giving the district court jurisdiction to hear certain state or [other non-]federal unfair competition claims" when joined with a substantial and related claim under the patent laws. *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 669, 7 USPQ2d 1097, 1104 (Fed.Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). Mars contends that for purposes of section 1338(b), the term "unfair competition" should be broadly construed to cover all "business torts," including the infringement of a foreign patent.

■ Section 1338(b) was enacted to authorize a federal court to assume jurisdiction over a non-federal unfair competition claim joined in the same case with a federal cause of action arising from U.S. patent, copyright, plant variety protection, or trademark laws in an effort to avoid "piecemeal" litigation.

*See* 28 U.S.C. § 1338(b) note; 1 James W. Moore *et al., Moore's Federal Practice* ¶ 0.62[6] (2d ed. 1993). However, being a jurisdictional provision, section 1338(b) creates no substantive basis for a claim of unfair competition. *See Water Technologies,* 850 F.2d at 669, 7 USPQ2d at 1104. Thus, an asserted claim of unfair competition which a plaintiff seeks to join with a related claim under federal patent, copyright, plant variety protection, or trademark law must find a substantive basis in some other, independent source of law. *Id.* at 670, 7 USPQ2d at 1105.

Here, Mars seeks to extend the scope of section 1338(b) to a claim of infringement of a Japanese patent, which it characterizes as a type of unfair competition. Mars, however, does not assert any state or federal basis for its claim of unfair competition. It does not even cite any Japanese precedent holding that patent infringement constitutes unfair competition under Japanese law. Nevertheless, Mars insists that infringement of a foreign patent is an act of unfair competition as a matter of United States law.

■ Whether an act constitutes the tort of "unfair competition" within the meaning of section 1338(b) is a question of law that we review *de novo. See O'Brien v. Westinghouse Elec. Corp.,* 293 F.2d 1, 13–14, 130 USPQ 79, 88–89 (3d Cir.1961); *Telechron, Inc. v. Parissi,* 197 F.2d 757, 761 (2d Cir. 1952). In determining the breadth of the term "unfair competition" as it is used in section 1338(b), we bear in mind that when Congress borrows a common law term in a statute, absent a contrary instruction, it is presumed to adopt the term's widely accepted common law meaning. *See Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952); *see also Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

■ The common law concept of "unfair competition" has not been confined to any

---

**2.** That subsection provides that

[t]he district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substan-

tial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

28 U.S.C. § 1338(b) (1988).

rigid definition and encompasses a variety of types of commercial or business conduct considered "contrary to good conscience," *International News Serv. v. The Associated Press*, 248 U.S. 215, 240, 39 S.Ct. 68, 73, 63 L.Ed. 211 (1918), including acts of trademark and trade dress infringement, false advertising, dilution, and trade secret theft, *see* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 1.05 (3d ed. 1993); Richard B. Gallagher, Annotation, *Modern Status of Pendent Federal Jurisdiction, Under 28 USCS § 1338(b), Over State Claim of Unfair Competition When Joined with Related Claim Under Federal Trademark Laws*, 62 A.L.R.Fed. 428 pt. V (1983). However, infringement of patent rights, domestic or foreign, is not generally recognized as coming within the rubric of "unfair competition." [3]

■ Unfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights. *See* McCarthy, *supra*, § 6.01; *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480–82, 94 S.Ct. 1879, 1885–86, 40 L.Ed.2d 315 (1974). The law of unfair competition generally protects consumers and competitors from deceptive or unethical conduct in commerce. *See* Harry D. Nims, *The Law of Unfair Competition and Trade–Marks* § 1 (1947); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 981, 103 L.Ed.2d 118 (1989) (the law of unfair competition, in contradistinction to patent law, "has its roots in the common-law tort of deceit."). Patent law, on the other hand, protects a patent owner from the unauthorized use by others of the patented invention, irrespective of whether deception or unfairness exists.

■ The distinction between the law of unfair competition and patent law is also evident in the general statutory framework enacted by Congress. Whereas patent law is completely preempted by federal law, *see* 35 U.S.C. §§ 1 through 376 (1988); U.S. Const. art. I, § 8, cl. 8, the law of unfair competition,

despite some federal encroachment, *see* 15 U.S.C. § 1125(a) (1988), remains largely free from federal exclusivity. The provisions of Title 35 governing patents are not *in pari materia* with the state and federal provisions governing unfair competition. Moreover, section 1338(b) itself expressly sets a claim of unfair competition apart from a claim arising under U.S. patent law. *See Ramirez & Feraud Chili Co. v. Las Palmas Food Co.*, 146 F.Supp. 594, 603 (S.D.Cal.1956) (this section "necessarily presupposes a claim of unfair competition arising otherwise than 'under the copyright, patent, and trademark laws,' since, unless so interpreted, § 1338(b) would confer no jurisdiction additional to that already conferred by section 1338(a) and so would be mere surplusage."), *aff'd*, 245 F.2d 874 (9th Cir.1957), *cert. denied*, 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357 (1958).

■ Although section 1338(b) does not make a comparable distinction between a claim of unfair competition and a claim arising under foreign patent law, that alone does not allow us to simply equate these dissimilar causes of action. Statutes purporting to confer federal subject matter jurisdiction must be narrowly construed, with ambiguities resolved against the assumption of jurisdiction. *See Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed.Cir.1992). In the absence of clear evidence that a claim of infringement of a foreign patent was intended by Congress to qualify as a claim of unfair competition under section 1338(b), we are unable to read the statute as expansively as Mars urges. To interpret the term "unfair competition" in section 1338(b) in a manner inconsistent with the ordinary and usual sense of that word would impermissibly expand the jurisdiction of the district courts beyond that clearly envisioned or desired by Congress.

We hold as a matter of law that a claim of infringement of a foreign patent does not constitute a claim of unfair competition within the meaning of section 1338(b). Therefore, we conclude that the district court did not err in refusing to entertain Mars' claim

---

**3.** Section 337 of the Tariff Act of 1930, codified as amended at 19 U.S.C. § 1337 (1988 & Supp. IV 1992), is no exception. The statute specifies as an "unlawful activity" *importation* into the United States of an article that infringes a U.S. patent or was made by means of a process covered by a U.S. patent. 19 U.S.C. § 1337(a)(1)(B) (emphasis added).

of infringement of the Japanese patent under section 1338(b).

### III. Supplemental Jurisdiction

 Alternatively, Mars argues that the district court has jurisdiction over the Japanese patent infringement claim by authority of 28 U.S.C. § 1367. That provision confers on a district court, in an action in which it possesses original jurisdiction over a federal claim, "supplemental" jurisdiction to entertain certain non-federal claims contained in the same action that are not otherwise supported by original jurisdiction.

The fundamental principles of supplemental jurisdiction were addressed at length by the Supreme Court in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Court delineated the constitutional limits of a federal court's authority to hear pendent non-federal claims. The Court stated that a federal court possesses the "power" to entertain a non-federal claim if it is joined with a related federal claim such that "the entire action before the court comprises but one constitutional 'case.'" *Id.* at 725, 86 S.Ct. at 1138. The Court further explained that the requisite relatedness between the federal and non-federal claims exists for jurisdictional purposes when the claims derive from a "common nucleus of operative fact," and as such, would ordinarily be expected to be tried in one proceeding. *Id.* In addition, the Court stated that when judicial power exists to hear a non-federal claim, the exercise of jurisdiction over that claim is discretionary with the trial court. *Id.* at 726, 86 S.Ct. at 1139.

Uncertainty respecting the scope of pendent and ancillary jurisdiction prompted Congress to provide the federal courts with express statutory authority to hear "supplemental" claims in actions commenced on or after December 1, 1990. *See* H.R.Rep. No. 734, 101st Cong., 2d Sess. 28 (1990); 28 U.S.C. § 1367 note. Enacted as part of the Judicial Improvements Act of 1990, Pub.L. 101–650, 104 Stat. 5089, section 1367 codified the basic principles articulated by the Supreme Court in *Gibbs* respecting the scope and exercise of supplemental jurisdiction.

H.R.Rep. No. 734 at 29 n. 15. In cases in which a district court possesses original jurisdiction over a claim, subsection (a) confers on federal district courts supplemental jurisdiction to entertain all other claims "that are so related ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The relatedness requirement of section 1367(a) is satisfied by any claim meeting the "common nucleus of operative fact" test of *Gibbs*. *See Sinclair v. Soniform*, 935 F.2d 599, 603 (3d Cir.1991). Additionally, the statute reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court. 28 U.S.C. § 1367(c).

In the instant case, the district court assumed, without deciding, that it had the authority under section 1367(a) to hear the Japanese patent infringement claim, although it ultimately declined to exercise its jurisdiction. In making that assumption, the district court relied on *Ortman v. Stanray*, 163 USPQ 331 (N.D.Ill.1969), *rev'd on other grounds*, 437 F.2d 231, 168 USPQ 617 (7th Cir.1971), in which a district court held that it possessed supplemental jurisdiction over claims alleging foreign patent infringement brought in the same complaint as a claim alleging infringement of a U.S. patent.

In *Ortman*, a patent owner filed a complaint containing four separate causes of action for alleged infringement of its U.S., Canadian, Brazilian, and Mexican patents. The defendant moved to dismiss the three counts alleging infringement of the foreign patents for lack of jurisdiction. The motion was denied and the order was certified for appeal by the district court. On appeal, the Seventh Circuit affirmed the denial of the motion to dismiss, concluding that "[a]ll of the actions of defendant of which complaint is made are the result of defendant doing similar acts both in and out of the United States." *Ortman v. Stanray*, 371 F.2d 154, 158, 152 USPQ 163, 166 (7th Cir.1967). Consistent with that holding, the district court on remand found jurisdiction on the basis that the "charges arising from the sale and manufacture of the same instrumentality in various countries clearly arise from 'a common nucle-

us of operative fact.'" 163 USPQ at 334 (quoting *Gibbs* ).

Although section 1367(a) was not at issue in *Ortman*, Mars maintains that the decision provides sufficient authority to support the district court's assumption that the two claims are so related that they form part of the same case or controversy. Mars contends that the U.S. and Japanese patents are "counterparts" of one another and that their claims are similar. Mars further asserts that the accused products in the U.S. and Japanese patent infringement claims against Nippon Conlux are the same or similar. Thus Mars insists that, as in *Ortman*, the similarities between the claims at issue are such that they constitute one case and would be expected to be tried in one proceeding.

■ The facts alleged in Mars' own complaint, however, belie the notion that the two claims are derived from a common nucleus of operative fact. Mars' claim respecting infringement of U.S. Patent 3,918,565 focuses exclusively on a device manufactured and designed by Nippon Conlux and marketed by Conlux U.S.A. in the United States as the "Premier Coin Changer." The Premier device incorporates an "E920" electronic coin discriminator that Mars asserts infringes claims 2, 3, and 60 of the '565 patent. All three claims are method claims directed to the electronic examination and identification of coins. In contrast, the sole claim· of the Japanese Patent 1557883 is an apparatus claim that does not literally contain the limitations of claims 2, 3, and 60 of the U.S. patent, *viz.*, those relating to the storage of first and second electrical signal values in programmable memory for comparison with a stored reference value, as disclosed in claims 2 and 60, or the limitation of claim 3 requiring the use of an electromagnetic field. Furthermore, the range of accused devices in Japan is much broader than in the United States. At least nine devices using five types of coin discriminators in addition to the E920 are accused of infringing the Japanese patent.

Although certain of the devices accused of infringing the Japanese patent may be similar to the Premier device, there ·are differences in the acts alleged in the two counts brought against Nippon Conlux. In one count, Mars charges Nippon Conlux with direct and induced infringement of Mars' U.S. patent in manufacturing the Premier device in Japan and causing it to be sold in the United States. In the other count, Nippon Conlux is charged only with direct infringement of Mars' Japanese patent.

Thus, in contrast to *Ortman*, neither "similar acts" nor the "same instrumentality" are at issue in the two remaining counts brought by Mars against Nippon Conlux in the Delaware district court. We conclude that the foreign patent infringement claim at issue here is not so related to the U.S. patent infringement claim that the claims form part of the same case or controversy and would thus ordinarily be expected to be tried in one proceeding. The respective patents are different, the accused devices are different, the alleged acts are different, and the governing laws are different. The assertion of supplemental jurisdiction over the Japanese infringement claim would in effect result in the trial court having to conduct two separate trials at one time.

Accordingly, we hold that the district court erred in assuming that it had "power" to hear the Japanese patent infringement claim under section 1367(a). Federal courts may not assume jurisdiction where none exists. *See Christianson v. Colt Indus. Operating Sys.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988).[4]

## IV. *Forum Non Conveniens*

Mars has informed us that it may plead diversity jurisdiction under 28 U.S.C. § 1332(a)(2) by way of an amendment to the pleadings under 28 U.S.C. § 1653 if we hold that the district court does not have jurisdiction under section 1338(b) or 1367.[5] In view

---

4. In so holding, we need not address whether the district court abused its discretion in declining to exercise supplemental jurisdiction.

5. Mars states in its reply brief that it "does ·not argue the existence of diversity jurisdiction on this appeal, but simply has noted that Mars could plead such jurisdiction in the future, so as not to

of this "threat" and in the interest of judicial economy, we will address certain aspects of the district court's decision as they may apply to the possibility of future dismissal under the doctrine of *forum non conveniens.*

 Although the district court did not directly rule on the *forum non conveniens* issue raised by Nippon Conlux below, it made a number of findings that are pertinent to the "public interest" factors that must be weighed in considering a motion for dismissal under that doctrine. Such factors include "the 'local interest in having localized controversies decided at home'; the interest in having the trial ... in a forum that is at home with the law that must govern the action; [and] the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir.1991) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981)).

In refusing to exercise jurisdiction over the Japanese patent infringement claim, the district court found that that claim would require the court to resolve complex issues of Japanese procedural and substantive law, a task further complicated by "having to agree on the proper translation of laws, documents and other communications." 825 F.Supp. at 76, 27 USPQ2d at 1953. The court also found that general concerns respecting international comity counsel against exercising jurisdiction over a matter involving a Japanese patent, Japanese law, and acts of a Japanese defendant in Japan. *Id. See Stein Assoc., Inc. v. Heat and Control, Inc.*, 748 F.2d 653, 658, 223 USPQ 1277, 1280 (Fed.Cir. 1984) ("Only a British court, applying British law, can determine ... infringement of British patents.").

Thus, the trial court has already made findings pertinent to a *forum non conveniens* analysis which may support dismissal in favor of adjudicating the Japanese patent infringement claim in a suitable forum in Japan. Those findings are not clearly erroneous; thus any attempt to replead jurisdiction

based on diversity of citizenship at this point would seem ill-founded.

## CONCLUSION

The district court lacks original jurisdiction over the Japanese patent infringement claim pursuant to 28 U.S.C. § 1338(b) because a claim of infringement of a foreign patent is not a claim of unfair competition within the meaning of that provision. In addition, the district court erred in assuming authority to hear the claim under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the claim is not so related to the U.S. patent infringement claim that it forms part of the same case or controversy under Article III of the U.S. Constitution.

***AFFIRMED.***

---

conceal that possibility from this Court." This possibility was confirmed at oral argument.