**MARS, INCORPORATED, Plaintiff,**

v.

**NIPPON CONLUX KABUSHIKI-KAISHA, Defendant.**

**Civ. A. No. 92–578–RRM.**

United States District Court,
D. Delaware.

June 8, 1994.

Charles S. Crompton, Jr., William J. Marsden, Jr., and Joanne Ceballos, Potter Anderson & Corroon, Wilmington, DE, John B. Pegram, Peter H. Priest, Wayne S. Breyer, and Jeffrey M. Weinick, Davis Hoxie Faithfull and Hapgood, New York, NY, for plaintiff.

Allen Terrell, Jr., Robert W. Whetzel, Richards, Layton and Finger, Wilmington, DE, Richard H. Zaitlen, David M. Simon, and Steven C. Sereboff, Spensley Horn Jubas & Lubitz, Los Angeles, CA, for defendant.

## OPINION

McKELVIE, District Judge.

This is a patent case. The plaintiff, Mars, Incorporated, alleges that the defendant, Nippon Conlux Kabushiki–Kaisha, infringed and induced its subsidiary to infringe Mars' Patent No. 3,198,565. In an earlier action, Mars sued Nippon Conlux's subsidiary, Conlux USA, for patent infringement, and won a judgment of $545,562. *See Mars Incorporated v. Conlux USA Corporation*, Civil Action No. 90–751–RRM. Pending before the court is Nippon Conlux's Motion for Summary Judgment for Claim Preclusion, Mars' Motion for Reargument, and Mars' Motion to Amend the Complaint. Briefing is complete on these motions, and the court heard oral argument on March 29, 1994. This is the court's decision on these motions.

*FACTS*

Mars is the owner of U.S. Patent No. 3,918,565 ("the '565 patent"), which is titled "Method and Apparatus for Coin Selection Utilizing a Programmable Memory." The apparatus described in the '565 patent may be used in a coin-operated device, such as a soda vending machine. When a person places a coin in the vending machine, the patented apparatus will determine if the coin is genuine and the denomination of the coin. *See generally Mars Incorporated v. Conlux USA Corporation*, 818 F.Supp. 707, 28 U.S.P.Q.2d 1161 (D.Del.1993), *aff'd*, 16 F.3d

421 (Fed.Cir.1993). Claims 1, 2, 3, and 60 of the '565 patent read as follows:

1. A method of examining coins with respect to authenticity including the steps of examining a first unidentified coin by making a measurement with respect to a first characteristic of the coin and thereby producing a first electrical signal having a quality with a first value indicative of the first characteristic of the first coin, comparing the first value with a stored value of the same quality in a programmable memory, and producing a signal indicative of the acceptability of the first coin with respect to the first characteristic when the first value is within predetermined limits for acceptable coins of a given denomination of the stored value.

2. The method of claim 1 further including the steps of examining a second, representative coin and thereby producing an electrical signal having a second value of the same quality indicative of the first characteristic of the second coin, causing the second value to be stored in the programmable memory, and subsequently conducting the other steps with respect to the first coin.

3. The method of claim 2 wherein the step of examining the first coin includes the substep of subjecting the first coin to an electromagnetic field, wherein the value of the first quality is indicative of the degree of interaction of the coin with the field.

60. A method of examining coins with respect to authenticity including the steps of examining a disc of known characteristics and causing a value to be stored in a programmable memory as a result of the examination, examining an unidentified coin at a later time and thereby producing a first electrical signal having a quality with a first value indicative of a first characteristic of the first coin, comparing the first value with the value stored in the programmable memory, and producing a signal indicative of the acceptability of the first coin with respect to the first characteristic when the first value is within predetermined limits for acceptable coins of a given denomination, the limits being dependent at least in part upon the stored value.

The defendant, Nippon Conlux is a Japanese corporation. It manufactures the "Premier" coin changer and the "E920" coin discriminator, which is a part of the Premier coin changer. Nippon Conlux sold Premier coin changers to its wholly owned subsidiary, Conlux USA. Conlux USA sold these coin changers in the United States.

In 1990, Mars filed suit against Conlux USA, alleging that Conlux USA infringed the '565 patent by using and selling Premier coin changers. That case proceeded to trial, and on May 11, 1992, a jury found that Conlux USA infringed claims 1, 2, 3, 8, 11, 20, 21, 22, 23, 24, 27, 49, 57, 60, and 61 of the '565 patent, and that the patent was not invalid or unenforceable. On December 18, 1992, the jury awarded Mars actual damages of $545,562, but found that Mars had not proven that Conlux USA's infringement was willful. This court resolved post-trial motions by Memorandum Opinion and Order of April 15, 1993. *Mars Incorporated v. Conlux USA Corporation*, 818 F.Supp. 707 (D.Del. 1993). The United States Court of Appeals for the Federal Circuit affirmed the judgment and this court's order. *Mars Incorporate v. Conlux USA Corporation*, 16 F.3d 421 (1993). Conlux USA has satisfied the judgment against it. Nippon Conlux controlled and paid for Conlux USA's defense in the Conlux USA litigation. Mars' Brief Opposing Claim Preclusion, p. 5; Nippon Conlux's Reply to Mars' Brief Opposing Nippon Conlux's Motion for Summary Judgment for Claim Preclusion, p. 5.

Mars filed this suit against Nippon Conlux on October 2, 1992. Mars alleged three causes of action in its Complaint. The first cause of action alleged that Nippon Conlux infringed claims 2, 3, and 60 of the '565 patent and induced Conlux USA to infringe these claims. In the second cause of action, Mars alleged that certain directors of Nippon Conlux and Conlux USA caused and induced Conlux USA to infringe the '565 patent. The second cause of action and the individual defendants were dismissed with prejudice pursuant to a Stipulated Order. In the third cause of action, Mars alleged that Nippon

Conlux infringed Japanese Patent No. 1557883. The court dismissed this cause of action by Memorandum Opinion and Order dated June 10, 1993. *Mars, Incorporated v. Nippon Conlux Kabushiki-Kaisha*, 825 F.Supp. 73, 27 U.S.P.Q.2d 1951 (D.Del.1993). The Federal Circuit affirmed this order. 24 F.3d 1368, 30 U.S.P.Q.2d 1621 (Fed.Cir.1994)

On May 27, 1993, Nippon Conlux filed a Motion for Summary Judgment on the Issue of Direct Infringement. The court granted this motion by Memorandum Opinion and Order of September 28, 1993. *Mars, Incorporated v. Nippon Conlux Kabushiki-Kaisha*, 855 F.Supp. 670, 1993 WL 383571 (D.Del.1993). Mars requested reargument. The court has permitted extensive rebriefing and reargument.

*DISCUSSION*

Nippon Conlux filed a Motion for Summary Judgment for Claim Preclusion on December 27, 1993. Nippon Conlux argues that as a result of the proceedings in the Conlux USA litigation, Mars' claims in these proceedings are barred by the doctrine of claim preclusion, which is also known as res judicata. Mars argues that the motion should be denied because Nippon Conlux has failed to show that the parties and claims at issue here are the same as in *Conlux USA*.

I. *Choice of Law*

 The first question before this court is whether it should follow the precedents of the Federal Circuit or the Third Circuit. In a patent case, when an issue pertains to a matter not unique to the Federal Circuit's exclusive appellate jurisdiction, this court should follow the discernable law of the Third Circuit. This court, however, will follow the precedent of the Federal Circuit when an issue involves substantive questions coming exclusively within the jurisdiction of the Federal Circuit, the disposition of which would have a direct bearing on the outcome. *Mars, Incorporated v. Nippon Conlux Kabushiki-Kaisha*, 24 F.3d 1368 (Fed.Cir.1994). Generally, the application of principles of res judicata is not a matter that is committed to the exclusive jurisdiction of the Federal Circuit. *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed.Cir.1989) ("in

applying the doctrine of res judicata in this case, we must look to Third Circuit law"), *cert. denied* 493 U.S. 855, 110 S.Ct. 160, 107 L.Ed.2d 117 (1989); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1471 n. 1 (Fed.Cir. 1989); *see Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 477 n. 7 (Fed.Cir.1991).

Mars appears to argue that in *Foster* Chief Judge Nies, writing for the Federal Circuit, abandoned the choice of law rule she had announced in 1989 in *Hartley*. This interpretation is incorrect. In *Foster*, the question before the Federal Circuit was "not simply whether [the Federal Circuit] should apply the regional circuit's law of *res judicata* with respect to a consent decree, but whether the public policies expressed in [*Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) ] override the general *res judicata* principles which would otherwise apply." *Foster*, 947 F.2d at 475. The Federal Circuit held that it should pronounce its own interpretation of *Lear*, but that it would look to regional circuits to determine the general principles of res judicata. *Foster*, 947 F.2d at 475, 477 n. 1.

The court concludes that it should follow the Third Circuit's precedents on the issue of claim preclusion.

II. *Claim Preclusion and Issue Preclusion*

The Supreme Court explained the importance and rationale of the doctrines of claim preclusion and issue preclusion in *Montana v. United States*:

Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (citations omitted).

■ Under the federal law of claim preclusion, a claim may not be asserted if a defendant can demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). The doctrine of claim preclusion prevents a party from prevailing not only on issues that were actually litigated in a prior suit, but also on issues it might have but did not assert in the first action. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988). Courts require "that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." *Lubrizol*, 929 F.2d at 963.

Mars argues that claim preclusion should not apply here because Nippon Conlux was not a party to the Conlux USA litigation, and claim preclusion does not bind privies. It is true that Nippon Conlux and Conlux USA are different entities, and Nippon Conlux was not a party to the Conlux USA litigation. However, as noted above, the Third Circuit has held that the doctrine of claim preclusion does apply to privies. *Id., see also Montana*, 440 U.S. at 153, 99 S.Ct. at 973 ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.") (emphasis added).

■ The doctrine of claim preclusion is related to the doctrine of issue preclusion, which is also known as collateral estoppel. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior cause of action." *Montana*, 440 U.S. at 153, 99 S.Ct. at 973; *accord* Restatement, Second, Judgments § 27. An adjudication of an issue also binds a person who controls the presentation of a party to the adjudication. *Id.,* § 39; *accord Montana*, 440 U.S. at 154, 99 S.Ct. at 973–74.

A. Prior Judgment

The first element of claim preclusion is that there be a final judgment on the merits in a prior suit. This element is not in dispute. This court entered a final judgment in the Conlux USA litigation.

B. Identity of Parties

The second element of claim preclusion is that the prior suit involve the same parties or their privies as the current suit. "[R]es judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir.1972).

■ Conlux USA is a wholly owned subsidiary of Nippon Conlux. The alleged infringing acts relate to the sales of machines from Nippon Conlux to Conlux USA, and the subsequent sale and use of the machines in the United States. Nippon Conlux controlled and paid for Conlux USA's defense in the Conlux USA litigation. Under these circumstances, the court finds that there is a sufficiently close relationship between the two defendants to bar Mars from asserting claims against Nippon Conlux that it already litigated against Conlux USA. *See Lubrizol*, 929 F.2d at 966 (wholly owned subsidiary of defendant in prior suit shielded by res judicata).

C. Identity of Claims

■ The final element of claim preclusion is that the subsequent suit be based on the same cause of action as the prior suit. The question of whether two suits are based on the same cause of action "is thought to turn on the essential similarity of the underlying events," rather than on the specific legal theories invoked. *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir.1982) (en banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). The focal point of the court's analysis should be "whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir.1984).

The core of a patent case is often an analysis of the allegedly infringing device. *Foster,* 947 F.2d at 479–480 ("An essential fact of a patent infringement claim is the structure of the device or devices in issue."). The allegedly infringing devices in this case are the exact same machines that were the subject of the Conlux USA litigation. In both cases, Mars alleges infringement of the same patent, and Conlux USA was found to be infringing the same patent claims that Mars alleges Nippon Conlux infringed. In *Conlux USA,* Mars alleged:

> CONLUX has been and still is infringing the '565 patent by using and selling apparatus for examining coins covered by one or more claims of the '565 patent and by practicing methods of examining coins covered by one or more claims of the '565 patent; and CONLUX is liable for infringement of the '565 patent by having induced, and by continuing to induce, others to infringe the '565 patent.

*Mars v. Conlux USA,* Complaint, ¶ 8. Mars alleged that Conlux's acts were willful. *Id.,* ¶ (d).

The similarities between that case and the current case are readily apparent from an examination of the Complaint in this case. In Mars' "First Cause of Action," Mars alleged that Nippon Conlux committed the following acts:

> 21. On information and belief, Nippon Conlux manufactured Premier coin selectors in Japan and caused them to be shipped to Conlux U.S.A., the importation of which the jury found infringed method claims 2, 3 and 60 of the '565 patent.
> 22. On information and belief, acting in concert with Conlux U.S.A. as its agent, Nippon Conlux caused said Premier coin selectors to enter into the stream of commerce and caused them to be sold to persons throughout the United States, including Delaware.
> 23. On information and belief, Nippon Conlux caused and induced Conlux U.S.A. to commit acts which the jury verdict found infringed method claims 2, 3 and 60 of the '565 patent.
> 24. On information and belief, Nippon Conlux, through its own acts and acting through its agent Conlux U.S.A., has directly infringed claims 2, 3, and 60 of the '565 patent.
> 25. Upon information and belief, said acts of Nippon Conlux and Conlux U.S.A. have been willful.

Complaint, ¶¶ 21–25.

Thus, as set forth in Mars' Complaint, every act underlying Mars' cause of action in this suit is intimately intertwined with events that were litigated in *Conlux USA.* Mars' proposed amended Complaint contains no substantive change to the first cause of action other than to identify Conlux USA as Nippon Conlux's "servant," and to allege infringement of the '565 patent. The court also notes that throughout the Conlux USA litigation, Mars sought to identify the Conlux companies as a single entity, and to attribute the knowledge of Nippon Conlux to Conlux USA. *See, e.g., Mars Incorporated v. Conlux USA Corporation,* Civil Action No. 90–751–RRM, transcript of Mars' counsel's opening statement in the damage phase of the trial, pp. 34–36.

The court finds that the underlying facts in the Conlux cases, and the proof of these facts, overlap to such a degree as to form the same cause of action. The facts underlying both Conlux cases are related in time, space, origin, and motivation, and would form a convenient trial unit. Treating the underlying facts as a unit is appropriate given the parties' understanding of the Conlux companies' business relations. *See* Restatement, Second, Judgments § 24(2) (defining the dimensions of a "claim"); *Gregory,* 843 F.2d at 117. The court therefore finds, pursuant to the doctrine of claim preclusion, that Nippon Conlux is entitled to summary judgment on Mars' remaining cause of action.

*CONCLUSION*

The court finds, pursuant to the doctrines of claim preclusion and issue preclusion, that Mars may not relitigate its claims of patent infringement. Therefore, the court will grant Nippon Conlux's Motion for Summary Judgment for Claim Preclusion. Mars' Motion to Amend the Complaint and Mars' Motion for Reconsideration are moot, and will

be denied. The court will issue an Order in accordance with this Opinion.