**LRC ELECTRONICS, INC., Plaintiff,**

v.

**JOHN MEZZALINGUA ASSOCIATES, INC., Defendant.**

**No. 95–CV–1661 (FJS) (DS).**

United States District Court, N.D. New York.

Aug. 25, 1997.

---

Weingarten, Schurgin, Gagnbebin, & Hayes, Boston, MA, for Plaintiff; Paul J. Hayes, Dean G. Bostock, of counsel.

Hiscock & Barclay, LLP, Syracuse, NY, for Plaintiff; Richard D. Hughes, of counsel.

Samuels, Gauthier, Steven & Reppert, LLP, Boston, MA, for Defendant; Sibley P. Reppert, William E. Hilton, of counsel.

Hancock & Estabrook, Syracuse, NY, for Defendant; James R. McVety, of counsel.

Pennie & Edmonds LLP, New York, NY, for Defendant; Stephen J. Harbulak, of counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This is a patent infringement action pursuant to 35 U.S.C. § 271. Plaintiff LRC Electronics Inc. ("LRC") is a New York corporation which designs and sells, among other products, patented coaxial cable connectors, including the patent at issue in this case, United States Patent No. 4,902,246 ("the '246 patent").[1] Defendant John Mezzalingua Associates, Inc. ("JMA") is a New York corporation whose division, Production Products Corporation ("PPC"), manufactures and sells

---

1. Coaxial cable connectors are used to connect coaxial cable to electronic devices such as televisions and video cassette recorders. The '246 patent issued on February 29, 1990, from an application that was filed with the Patent and Trademark Office ("PTO") on January 6, 1989, and claims a date of filing, in part, of October 13, 1988 (the filing date of a related patent—Plaintiff's '675 patent). The '246 patent describes and discloses a "Snap–N–Seal" coaxial cable connector and includes one independent claim (claim one) and five dependent claims (claims two through six). Plaintiff alleges infringement of the independent claim (claim one) only.

allegedly infringing coaxial cable connectors known as "CMP" connectors.[2]

Plaintiff seeks a judgment declaring that the Defendant has willfully infringed Plaintiff's '246 patent. Plaintiff also seeks a permanent injunction enjoining the Defendant from making or selling products that infringe Plaintiff's '246 patent, lost profits, an increase in damages for wilful infringement pursuant to 35 U.S.C. § 284, interest, attorneys' fees, and costs. In its amended answer, the Defendant asserts two counterclaims for judgment declaring Plaintiff's '246 patent invalid under the statutory doctrines of anticipation and obviousness. Defendant also seeks judgment declaring that Defendant's original and redesigned CMP connectors do not infringe Plaintiff's '246 patent.[3]

Presently before the Court are Plaintiff's motions for leave to amend the complaint and for a preliminary injunction, and Defendant's motions for an order of production, a pretrial *Markman* hearing, and summary judgment on its counterclaims.

## Procedural History

Plaintiff filed its complaint on November 22, 1995.[4] On December 12, 1995, Defendant filed an answer with one counterclaim. On April 9, 1996, Defendant filed a motion for summary judgment on its original counterclaim. By letter dated July 12, 1996, Defendant also moved for an order compelling Plaintiff to produce Documents 17–48 listed in Plaintiff's privileged document list, and for

an order compelling Plaintiff to produce attorney Stanley M. Schurgin for deposition.[5] On August 15, 1996, Defendant filed a second motion for summary judgment on its second counterclaim.[6]

Shortly thereafter, on September 6, 1996, Defendant moved for leave to file an amended answer. Defendant sought leave to add the affirmative defense of "inequitable conduct" and a second counterclaim. On that same date, the Defendant also filed a motion for a pre-trial *Markman* hearing at which time the Court would receive expert testimony regarding the construction of certain terms in Plaintiff's '246 patent.[7]

At a hearing held on October 10, 1996, Plaintiff consented to Defendant's motion insofar as Defendant sought leave to amend its answer to add a second counterclaim concerning invalidity and non-infringement. However, Plaintiff opposed Defendant's motion for a *Markman* hearing and Defendant's request for leave to add the inequitable conduct defense. Following oral argument, the Court granted the Defendant leave to file an amended answer asserting both the second counterclaim and the inequitable conduct defense. The Court reserved decision on Defendant's motions for a *Markman* hearing, for production of documents, and for summary judgment on its second counterclaim.

On November 27, 1996, Plaintiff filed a motion for leave to file an amended complaint

2. There are actually two products at issue in the case: CMP connectors the Defendant sold prior to July 1996, which the Court will refer to as Defendant's "original CMP connectors;" and the CMP connectors the Defendant currently sells, which the Court will refer to as Defendant's "redesigned CMP connectors."

3. The Defendant also asserts a number of affirmative defenses including inequitable conduct. Defendant claims that the Plaintiff fraudulently failed to disclose highly relevant prior art (the '811 patent) to the patent and trademark office examiner charged with reviewing the application which resulted in Plaintiff's '246 patent.

4. On that same date, Plaintiff also filed a motion for a preliminary injunction. However, Plaintiff withdrew its motion by letter dated July 31, 1996, due to its belief that the Defendant was no longer manufacturing or selling Defendant's original "CMP" connector.

5. Mr. Schurgin is a senior partner in Plaintiff's law firm and was allegedly involved in the prosecution of the '246 patent. This motion was originally returnable before Magistrate Judge Scanlon, but was referred to the undersigned in the interest of judicial economy.

6. This motion was actually premature when filed because Defendant had not yet obtained leave to amend its answer to include a counterclaim concerning its redesigned CMP connector. However, as discussed below, Defendant was granted leave to file an amended answer asserting such a counterclaim on October 10, 1996. Therefore, this motion is now properly before the Court.

7. The motion is named after the Supreme Court's decision in *Markman v. Westview Instruments Inc.*, —— U.S. at ——, 116 S.Ct. at 1394 (1996).

asserting unfair competition and trade secret misappropriation claims arising out of allegations that the Defendant has previously contacted, and is currently contacting, Plaintiff's key employees in an attempt to hire them away and to obtain confidential information and trade secrets regarding Plaintiff's Snap–N–Seal connectors. At the same time, Plaintiff also filed a motion for a temporary restraining order and preliminary injunction.[8]

## Discussion

As stated, presently before the Court are Plaintiff's motions for leave to amend the complaint and for a preliminary injunction, and Defendant's motions for an order of production, a pre-trial *Markman* hearing, and summary judgment on its counterclaims. The Court will address these motions *seriatim.*

### I. Motion for Leave to Amend the Complaint

Plaintiff moves for leave to amend its complaint to assert a common law unfair competition claim pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Plaintiff seeks leave to file an amended complaint which will allege that the Defendant has recently embarked on a campaign to hire away Plaintiff's key employees and place them in positions in which they cannot avoid using and/or revealing confidential business and technical information they obtained while in Plaintiff's employ. Plaintiff alleges that the Defendant has already hired away two key engineers and a production specialist, and has attempted to recruit at least two other employees. Plaintiff further alleges, on information and belief, that the Defendant has misappropriated trade secrets of the Plaintiff, including confidential business and technical information.

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's proposed claim, and in the alternative, that Plaintiff has failed to state claims upon which relief can be granted.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Motions for leave to amend are committed to the sound discretion of the district courts. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994).

■ As stated, the Defendant's first argument is that the Court lacks subject matter jurisdiction over Plaintiff's proposed unfair competition claims.[9] In considering this jurisdictional issue, the Court is guided by the "fundamental precept that federal courts are courts of limited jurisdiction." *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux,* 24 F.3d 1368, 1372 (Fed.Cir.1994). "A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists." *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978)).

In this case, Plaintiff asserts that the Court has both original and supplemental jurisdiction over its proposed unfair competition and trade secret misappropriation claims

---

**8.** The parties consented to a temporary restraining order restraining the Defendant from contacting Plaintiff's current employees for the purposes of soliciting or hiring them, or for purposes of obtaining trade secrets from them. The parties also consented to an order restraining the Defendant from using, in any manner, Plaintiff's trade secrets relative to Plaintiff's Snap–N–Seal connectors.

**9.** Plaintiff contends that the Defendant's jurisdictional argument must be asserted in a separate motion to dismiss for lack of subject matter jurisdiction. However, evaluating the Defendant's jurisdictional arguments at this point in the litigation serves the interest of judicial economy and

is consistent with case law applying Rule 15(a). If it turns out that the Court lacks subject matter jurisdiction over Plaintiff's unfair competition claims, then Plaintiff's motion to amend will be denied on futility grounds. Moreover, the cases cited by Plaintiff, *Chan v. City of New York,* 803 F.Supp. 710 (S.D.N.Y.1992) and *Rolls–Royce Motor Cars, Inc. v. Schudroff,* 929 F.Supp. 117, 121 (S.D.N.Y.1996), do not state that a Defendant "must" raise jurisdictional arguments in a motion to dismiss, and neither case stands for the proposition that jurisdictional arguments cannot be raised in opposition to a motion for leave to amend a pleading.

pursuant to 28 U.S.C. §§ 1338(b) and 1367. Section 1338(b) provides, in relevant part, that "the district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the . . . patent . . . laws." 28 U.S.C. § 1338(b). This section was enacted to "avoid piecemeal litigation to enforce common-law and statutory copyright, patent and trade-mark rights by specially permitting such enforcement in a single civil action in the district court." ·See 28 U.S.C. § 1338(b) Advisory Committee's Note. Section 1338(b) is essentially a codification of the doctrine of pendent jurisdiction as it applies to patent, trademark, and copyright cases. *Conopco Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1571 n. 14 (1994) (affirming district court's dismissal of the plaintiff's pendent state law claims).

 The doctrine of pendent jurisdiction provides district courts with jurisdiction over non-federal claims when the claims derive from a "common nucleus of operative facts." *Mars Inc.* 24 F.3d at 1374 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). If the claims are such that one would ordinarily expect to try them all in one judicial proceeding, assuming substantiality of the federal issues, a federal court has the power to hear them all. *United Mine Workers*, 383 U.S. at 725, 86 S.Ct. at 1138. In fact, exercise of pendent jurisdiction over a plaintiff's state law claims, while not automatic, is generally a favored and normal course of action in the federal courts. *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir.1991). However, the exercise of pendent jurisdiction is, at its core, a matter left to the sound discretion of the district court. *Conopco*, 46 F.3d at 1571.

 In considering whether to exercise pendent jurisdiction over state law claims, courts consider a number of factors including: (1) the degree of overlap between the factual basis of the state and federal claims, (2) whether the state issue substantially predominates over the federal issue in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought, (3) whether the state claim would require substantial additional evidence at trial, (4) whether there is a likelihood of jury confusion, (5) whether the state law claim was asserted as a means of prejudicing the jury against the other party, (6) judicial economy, and (7) convenience and fairness to the litigants. *Verdegaal Bros., Inc., v. Union Oil of California*, 750 F.2d 947, 952 (Fed.Cir.1984); see also *Conopco*, 46 F.3d at 1571.

*Overlap in Factual Bases*

 Plaintiff argues that the evidence it intends to introduce on its unfair competition claims is also relevant to the patent issues of wilfulness of infringement, invalidity, and damages.

With respect to the issue of infringement, Plaintiff alleges that the three employees hired away by the Defendant, and the trade secrets allegedly misappropriated, were all associated with Plaintiff's "Snap–N–Seal" line of connectors (the connectors described in Plaintiff's allegedly infringed '246 patent). However, the Court finds that all of the new allegations in the amended complaint would be either irrelevant, or only minimally relevant, to Plaintiff's patent infringement claims. For example, the conduct alleged in Plaintiff's proposed amended complaint occurred many months, and even years, after the Defendant's decisions to manufacture and sell the original and redesigned CMP connectors. Moreover, evidence of the Defendant's recent hiring practices would be wholly irrelevant to whether the Defendant wilfully infringed Plaintiff's '246 patent by selling the original CMP connectors, and only minimally relevant, if at all, to whether the Defendant wilfully infringed Plaintiff's '246 patent by selling the redesigned CMP connectors because of the time frames involved .[10]

10. The case cited by Plaintiff in support of its argument, *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed.Cir.1996), is distinguishable from the case at bar because the issue in *Hoechst* was whether the jury's wilfulness finding was supported by substantial evidence. In that case, the jury found no literal infringement (a finding which was reversed on appeal), and that there was evidence that the defendant had conducted research to avoid the

With respect to the issue of patent invalidity, Plaintiff cites to *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099 (Fed. Cir.1985), and argues that evidence of copying (which the Plaintiff alleges in its proposed unfair competition claims) is relevant to whether the Plaintiff's patent is invalid under the doctrine of obviousness. *See* 35 U.S.C. § 103. However, obviousness is a multi-faceted concept involving a number of additional factual considerations such as (1) the scope and content of the prior art, (2) the differences between the art and the claims at issue, and (3) the level of ordinary skill in the art. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966). Moreover, unlike the present case where the issue of copying is disputed, the Defendant in *Panduit admitted* that it copied Plaintiff's patent, giving the evidence much greater value and relevance to the issue of obviousness. *Panduit Corp.*, 774 F.2d 1082.

Finally, with respect to the issue of damages, the Court does not find that evidence of the Defendant's allegedly improper hiring practices would not be relevant to the issue of whether to award Plaintiff a reasonable royalty or lost profits in the event the Plaintiff prevails on its infringement claims. *See Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1118–19 (Fed.Cir.1996).

After carefully considering the parties' arguments, the Court finds only minimal overlap between the factual bases of Plaintiff's unfair competition and patent infringement claims, and this factor weighs against exercising jurisdiction over Plaintiff's proposed unfair competition claims.

*Predominance and Proof of State Law Issues*

Turning to the second and third factors, the Court finds that while the issues underlying Plaintiff's proposed unfair competition claims would not substantially predominate over the federal issues of patent infringement and invalidity, substantial additional evidence regarding Plaintiff's unfair competition and trade secret claims would have to be offered at trial. For example, the witnesses relevant to Plaintiff's unfair competition claims are not, for the most part, the witnesses relevant for Plaintiff's patent infringement claims. Thus, the Court finds that these two factors, taken together, also weigh against exercising jurisdiction over Plaintiff's proposed unfair competition claim.

*Jury Confusion*

Turning to the fourth and possibly most important factor, the Court finds that the addition of these unfair competition claims into this case could cause a great deal of jury confusion. For example, Plaintiff seeks to allege that the employees hired away by the Defendant are revealing, or are very likely to reveal, confidential information regarding a new Snap–N–Seal connector currently under development. The introduction of additional technical information to the technical materials already at issue in the case unnecessarily complicates an already complicated case.[11] Thus, the Court finds that this factor also weighs against exercising jurisdiction over Plaintiff's unfair competition claims.

*Prejudice and Judicial Economy*

Finally, under the fifth and sixth factors, although Plaintiff denies that it is attempting to assert these unfair competition claims as a means of prejudicing the jury against the Defendant, the danger of such prejudice exists. Furthermore, the interests of judicial economy and fairness to the litigants in this case actually militate against exercising jurisdiction over Plaintiff's unfair competition claims because the patent claims have been pending for some time and the parties are

---

Plaintiff's patented process prior to coming out with the infringing product. *Id.* In this case, while Plaintiff's present conduct may be relevant to whether the Defendant is wilfully infringing Plaintiff's '246 patent by selling the redesigned "CMP" connectors, the allegedly improper conduct in this case is completely irrelevant to Plaintiff's infringement claim as it relates to Defendant's original "CMP" connector.

**11.** In fact, Plaintiff's arguments regarding the potential overlap of proof regarding Plaintiff's unfair competition claims and the issues of will-

ready for trial.[12] Thus, the Court finds that these factors also weigh against exercising jurisdiction over Plaintiff's proposed unfair competition claims.[13]

In summary, the Court finds that exercising jurisdiction over Plaintiff's unfair competition claims would result in a trial within a trial. *See Mars Inc.*, 24 F.3d at 1375. Although there is some overlap in the proof, this small efficiency gain is more than offset by the danger of jury confusion arising from the additional evidence that would have to be submitted to the jury on Plaintiff's unfair competition claims.

Therefore, after carefully reviewing the papers submitted and the applicable law, the Court finds that Plaintiff's motion for leave to amend the complaint must be denied. Consequently, Plaintiff's motion for a preliminary injunction, which is premised on Plaintiff's unfair competition claims, must also be denied as moot, and the temporary restraining order filed November 27, 1996, as amended by the Court's Order dated January 21, 1997, is hereby vacated.

fulness, patent validity, and damages, bear this point out.

12. Moreover, any discovery that has taken place regarding Plaintiff's proposed unfair competition claims could be used in a state court action should Plaintiff choose to pursue one.

13. In addition, the cases cited by Plaintiff in support of exercising jurisdiction over Plaintiff's unfair competition claim are highly distinguishable from the case at bar due in large part to the greater degree' of factual overlap between the federal and state claims in those cases. *See Mizuna, Ltd. v. Crossland Fed. Sav. Bank,* 90 F.3d 650, 657 (2d Cir.1996) (supplemental state claims arose out of the same purchase contract for the sale of real estate); *Biofeedtrac v. Kolinor Optical Enterps.,* 832 F.Supp. 585, 592 (E.D.N.Y. 1993) (common law fraud claims against one defendant arose out of the exact same series of transactions as the federal RICO claims against other defendants); *Rates Technology Inc. v. New York Telephone Co.,* No. 94CV9297, 1995 WL 438954 at *3 (S.D.N.Y.1995) (pendent claim alleged that the Defendant breached the licensing agreement covering the very same patent at issue in Plaintiff's infringement claims); *MCI Telecommunications Corp. v. John Mezzalingua Assocs.,* 921 F.Supp. 936 (N.D.N.Y.1996) (Defendant's state claims for breach of contract, negligence, and indemnification claims arose out of same fraudulent scheme as the Plaintiff's federal claims); *Dynamic Instrument Corp. v. Fedtro,*

## II. Defendant's Motion for Production of Documents

The Court will now briefly address Defendant's motion for an order directing Plaintiff to produce documents. As stated, Defendant moves for an order directing Plaintiff to produce Documents 17–48 listed in Plaintiff's privileged document list pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. The documents consist primarily of correspondence between LRC officials and LRC counsel regarding patent applications and invention records.

 Defendant argues that these documents are discoverable by virtue of the "crime-fraud" exception to the attorney-client privilege and work product doctrines. Specifically, Defendant maintains that the documents are relevant to its inequitable conduct defense, which asserts that the Plaintiff knew of and failed to disclose relevant prior art (specifically, the '811 patent and "EZF" connector) to the patent examiner reviewing Plaintiff's '246 application.[14]

*Inc.,* 266 F.Supp. 848, 851 (E.D.N.Y.1967) (Plaintiff's unfair competition claim involved allegations that the Defendant had engaged in unlawful practices, including allegedly improper communications with Plaintiff's customers regarding the patent litigation at issue in that case).

14. The Defendant also argues that Plaintiff waived any privilege by disclosing what the documents do *not* contain pursuant to the "fairness doctrine." The fairness doctrine teaches that disclosure of part of a privileged communication requires the disclosure of the remainder "to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *Variable–Parameter Fixture Development v. Morpheus Lights, Inc.,* 31 U.S.P.Q.2d 1158, 1160 (involving the disclosure of a "substantial portion" of a privileged memorandum and relying on *In re von Bulow,* 828 F.2d 94, 101 (2d Cir.1987)). In this case, however, Plaintiff has not selectively disclosed "substantial" portions of the privileged documents in order to make arguments in its favor. Plaintiff simply revealed that the documents do not contain any references to the "EZF" connector or '811 patent in an attempt to resolve this dispute. An in camera review of the documents confirmed Plaintiff's representation. Therefore, the Court finds that Plaintiff has not waived the attorney-client privilege protecting these documents from disclosure.

Plaintiff argues that the documents involve communications concerning patent applications and invention records and, as such, are privileged. Plaintiff also argues that the documents are irrelevant to Defendant's inequitable conduct defense because they do not mention the EZF connector or '811 patent.

▪ It is undisputed that the attorney-client privilege protects the documents at issue. *See Minnesota Mining & Mfg. v. Ampad Corp.,* 7 U.S.P.Q.2d 1589, 1590–91 (D.Mass.1987). The dispute in this case turns on the applicability of the "crime-fraud" exception in this case. The crime-fraud exception to the attorney-client privilege and work product doctrine is applicable in patent cases. *TRW Financial Services, Inc. v. Unisys Corp.,* 31 U.S.P.Q.2d 1065, 1069 (1992). It applies both in the context of allegations that a patent has been fraudulently procured or that the patent itself is invalid. *Id.*

▪ At oral argument, Plaintiff offered to produce the disputed documents for an in camera inspection to confirm Plaintiff's representations that the documents do not mention the '811 patent or the "EZF" connector. After carefully reviewing the documents, the Court finds that in fact they do not mention the '811 patent or the "EZF" connector. As a result, the Court finds that the documents are irrelevant to Defendant's inequitable conduct defense. Thus, the documents do not fall within the crime-fraud exception to the attorney-client privilege and work product doctrines, and Defendant's motion is denied.[15]

## III. Defendant's Motion for a *Markman* Hearing

The Court now turns to Defendant's motion for a *Markman* hearing. In *Markman*

*v. Westview Instruments, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1384, 1396, 134 L.Ed.2d 577 (1996), the United States Supreme Court held that the construction of a patent, including the interpretation of both ordinary and technical terms, is a matter of law reserved exclusively for the court rather than the jury.

In this case, the Defendant argues that the Court should receive expert testimony regarding the definition of the terms "compression sleeve means" and "snap" in Plaintiff's '246 patent. The Defendant urges the Court to hold this hearing prior to ruling on Defendant's motion for summary judgment in order to narrow the issues and possibly prompt settlement.[16]

Plaintiff, on the other hand, argues that the Court should wait and construe these terms after all the proof is received at trial. Plaintiff maintains that construing these terms at this time would not serve the interest of judicial economy, and that defining the phrase "compression sleeve means" at this time would be improper because this is "means-plus-function" language, which requires findings of fact reserved for the jury.

*Compression sleeve means*

▪ The phrase "compression sleeve means" is written using means-plus-function language authorized by 35 U.S.C. § 112. Section 112 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof

35 U.S.C. § 112, ¶ 6. This section permits an element of a patent claim to be expressed as

---

15. Defendant also seeks to depose attorney Schurgin, a senior partner in Plaintiff's law firm, and the attorney involved in the prosecution of Plaintiff's '246 patent. Defendant seeks to depose Mr. Schurgin regarding Plaintiff's knowledge of the "EZF" connector and '811 patent. However, in light of the in camera review of the documents at issue, and the strong policy against deposing opposing counsel, the Court finds that deposing Mr. Schurgin is unnecessary and Defendant's motion is denied.

16. Defendant relies heavily on *Elf Atochem North America, Inc. v. Libbey–Owens–Ford Co. Inc.,* 894 F.Supp. 844 (D.Del.1995). In that case, the Court discussed what it called the "various practical problems" with waiting until the close of evidence at trial to construe patent terms. As discussed more fully below, the practical problems discussed in that case are simply not present in the present case.

a means or step for performing a specified function. *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed.Cir.1991). "However, the scope of a means-plus-function claim is not limitless, but is confined to structures expressly disclosed in the specification and corresponding equivalents." *Id.; see also Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, — U.S. —, —, 117 S.Ct. 1040, 1048, 137 L.Ed.2d 146 (1997) ("application of the broad literal language of such claims must be limited to only those means that are 'equivalent' to the actual means shown in the patent specification").

In this case, Plaintiff argues that means-plus-function language cannot be fully defined by the court prior to trial because doing so requires factual findings by the jury regarding "equivalent" structures. Plaintiff also notes that *Markman* did not involve means-plus-function language.

■ Determining the scope of equivalent structures when evaluating a means-plus-function claim is an issue reserved for the finder of fact. *See Motorola Inc. v. Interdigital Technology Corp.*, 930 F.Supp. 952, 964 (D.Del.1996) ("[c]onstruction of terms found in the claims or the specification is a legal inquiry, but evaluation of the function and structural equivalence of an allegedly infringing product is a factual inquiry"). As such, to the extent Defendant asks the Court to define "compression sleeve means" by listing equivalent structures in the hopes that the Defendant's particular structure is absent from the list, the Court finds that such a ruling would completely usurp the function of the jury and is improper. Therefore, to the extent the Defendant seeks a *Markman* hearing to define the means-plus-function element "compression sleeve means" in Plaintiff's '246 patent, the Defendant's motion must be denied.

*Snap*

The Defendant also seeks a hearing to offer expert testimony regarding the meaning of the term "snap." As an initial matter, the Court notes that nowhere in the *Markman* decision does the Supreme Court state that courts *must* hold a pre-trial, or presummary judgment, hearing on the issue of claim construction. However, since the *Markman* decision was handed down, a number of district courts faced with claim construction disputes have held some sort of hearing. *See Comark Communications, Inc. v. Harris Corp.*, 1997 WL 87260 (E.D.Pa., Feb.24,1997); *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, 170 F.R.D. 391 (D.Del. 1997); *Lee's Aquarium and Pet Prods., Inc. v. Python Pet Products, Inc.*, 951 F.Supp. 1469 (S.D.Cal.1997); *P.A.T., Co. v. Ultrak, Inc.*, 948 F.Supp. 1506 (D.Kan.1996).

■ A *Markman* hearing to define the term "snap" would only be necessary if the Court needed expert testimony to interpret the term. Absent a special definition set forth in the patent, terms in a patent are generally interpreted as having their ordinary and customary meaning to persons experienced in the field of invention. *Hoechst Celanese Corp. v. BP Chemicals, Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996). When construing terms of a patent, courts must first look to "intrinsic" evidence, which includes the claim itself, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996). If the meaning of a term remains ambiguous after considering the intrinsic evidence in the case then, and only then, the court may consider extrinsic evidence of meaning, such as prior art documents, dictionaries, and expert testimony. *Id.*

As stated, the parties in this case dispute the meaning of the term "snap" in Plaintiff's '246 patent. Claim one of Plaintiff's '246 patent provides, in its entirety:

■ What is claimed is:

1. A *snap*-n-seal connector for mechanically and electrically interconnecting a coaxial cable to an electronic device having a threaded interface connector, the coaxial cable including a center conductor, a dielectric insulator encasing the center conductor, at least one braided shield disposed about the dielectric insulator and a jacket covering the at least one braided shield, comprising:

connector body means for coaxially receiving the coaxial cable, said connector body means including means for forming a moisture-proof seal between elements of said connector body means, nut member means adapted for rotably engaging the threaded interface connector of the electronic device, and means for mechanically and electrically engaging the at least one braided shield of the coaxial cable; and

compression sleeve means for *snap* engaging into said connector body means to mechanically connect the coaxial cable to said connector body means, said compression sleeve means in combination with said connector body means forming a 360 degree uniform compressive moisture-proof seal between said compression sleeve means and the jacket of the coaxial cable, said compression sleeve means including means for forming a 360 degree uniform compressive moisture-proof seal between said compression sleeve means and said connector body means.

Nowhere in this claim, or anywhere else in the '246 patent, is the term "snap" explicitly defined. Rather, the term is used repeatedly to describe the way in which the compression sleeve engages the connector body. For example, the specification states that the "compression sleeve is configured to *snap fit* into the collar member," and regarding installation the specification states that "insertion force is applied to *snap* the compression sleeve into final engagement with the connector body." Also, the record does not reveal any representations to the Patent and Trademark Office regarding the snap feature of this invention during the prosecution of the '246 patent.

Despite its rather common usage, after carefully considering the intrinsic evidence in this case, the Court finds that the exact meaning of the term "snap" is somewhat ambiguous.

However, rather than turning immediately to expert testimony, which the Federal Circuit has stated should be treated with "utmost caution for it is no better than opinion testimony on the meaning of statutory terms," the Court turns first to a dictionary, a source the Federal Circuit considers a more objective and reliable guide than expert testimony. *Vitronics Corp.*, 90 F.3d at 1576, 1585.

When used as a noun, a "snap" is defined as "a catch or fastening that closes or locks with a click," and when used as an adjective, "snap" is defined as "shutting, fastening or otherwise coming together with a click or by means of a device that snaps." Webster's Third New International Dictionary 2155 (1971) ("Webster's Dictionary"). After carefully considering the language used in claim one, the specification, and Webster's Dictionary, the Court finds that the meaning of the term "snap" is the one stated in Webster's Dictionary. Thus, the Court finds that no expert testimony, and hence no *Markman* hearing, is needed in the instant case, and the Defendant's motion is denied.

## IV. Summary Judgment Motions

Finally, the Court turns to the Defendant's motions for summary judgment. As stated, the Defendant moves for summary judgment on its counterclaim for non-infringement and its defense of invalidity.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of material fact is one that could be decided in favor of either party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### A. Validity

As stated, the Defendant seeks a judgment declaring Plaintiff's '246 patent invalid. A patent that has been examined and duly granted by the Patent and Trademark

Office is presumed valid. 35 U.S.C. § 282. This presumption of validity can only be overcome by clear and convincing evidence of invalidity. *Applied Materials v. Advanced Semiconductor Materials America, Inc.,* 98 F.3d 1563, 1569 (Fed.Cir.1996).

The Defendant in this case contends that Plaintiff's '246 patent was "anticipated" by a prior patent and is therefore invalid under 35 U.S.C. § 102. In the alternative, Defendant argues that Plaintiff's '246 patent was "obvious" in light of prior art, and is therefore invalid under 35 U.S.C. § 103. The Court will address these arguments *seriatim.*

### 1. Anticipation

 A patent is invalid if the claimed invention was known or used by others in this country before the invention thereof by the patent applicant, or was in public use or on sale in this country more than one year prior to the date of the patent application. 35 U.S.C. § 102. Where, as here, a claim of invalidity due to anticipation (also referred to as lack of novelty) is premised on a single prior art reference, every element of the claimed invention must literally be present and similarly arranged in order for the patent claim to be invalid. *See Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1236 (Fed.Cir.1989). In other words, "the identical invention must be shown in as complete detail as is contained in the patent claim." *Id.* Anticipation is a question of fact. *Scripps Clinic & Research Foundation v. Genentech. Inc.,* 927 F.2d 1565, 1576 (Fed. Cir.1991). "There must be no difference between the claimed invention and the referenced disclosure, as viewed by a person of ordinary skill in the field of invention." *Id.*

 Through the affidavits of two technical experts and one legal expert, the Defendant argues that the first claim of Plaintiff's '246 patent is anticipated by United States Patent No. 4,583,811 ("the '811 patent").[17] However, in the '811 patent the "compressive member," the "driver means," and the connector body appear to be engaged by threads, whereas claim one of the '246 patent discloses a "snap" engagement. Drawing all reasonable inferences in Plaintiff's favor, the Court finds that this difference in the means of engagement creates genuine issue of material fact as to this statutory defense. Therefore, the Court cannot grant the Defendant summary judgment on this theory.

### 2. Obviousness

 As stated, the Defendant also argues that Plaintiff's '246 patent is invalid under the doctrine of obviousness. A patent claim is invalid under 35 U.S.C. § 103 where the subject matter of the claim would have been obvious to one of ordinary skill in the art at the time the challenged invention was made. 35 U.S.C. § 103. When evaluating obviousness, the Court must focus on the claimed invention as a whole and consider the results achieved by the combination. *Gillette Co. v. S.C. Johnson & Son, Inc.,* 919 F.2d 720, 724–25 (Fed.Cir.1990). Obviousness is a legal conclusion premised on a number of factual determinations including: (1) the scope and content of the prior art, (2) the differences between the claims and the prior art, (3) the level of ordinary skill in the pertinent art, and (4) secondary considerations of obviousness such as commercial success, long felt but unsolved need, and the failure of others to solve the problem at hand, and copying of the invention by others. *B.F. Goodrich Co. v. Aircraft Braking Systems Corp.,* 72 F.3d 1577, 1582 (Fed.Cir. 1996). Moreover,

> [o]bviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion, or incentive supporting the combination. However, the suggestion to modify the art to produce the claimed invention need not be express-

---

17. While technical expert opinions are often helpful in cases such as this, courts generally find expert legal opinions to be of little benefit. Of course, "as to these types of opinions, the court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it."

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 983 (Fed.Cir.), *cert. granted,* 515 U.S. 1192, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995). The Court finds that the expert legal opinions offered by the Defendant to be cumulative and rather unhelpful in this case.

ly stated in one or all the references used to show obviousness. Rather, the test is whether the combined teachings of the prior art, taken as a whole, would have rendered the claimed invention obvious to one of ordinary skill in the art.

*In re Napier,* 55 F.3d 610, 613 (Fed.Cir.1995) (internal quotations and citations omitted).

■ In this case, the Defendant argues that the combination of five pieces of prior art and the Plaintiff's own depiction of the prior art in the '246 patent render claim one of the '246 patent obvious. Defendant cites United States Patent Nos. '811, '451, '263, '792, and Great Britain Patent No. 228 as relevant prior art. However, after carefully considering the record including the referenced prior art, the Court finds that the expert affidavits and other evidence submitted by the parties reveal disputed issues of fact regarding the scope of the prior art, the content and nature of the prior art, and its applicability and relevance to Plaintiff's invention.

Therefore, the Court finds that genuine issues of fact exist regarding the issues of obviousness and anticipation, and the Defendant's motion for summary judgment on these theories must be denied.

## B. Infringement

Turning to the issue of infringement, as stated, the Defendant argues that its original and redesigned "CMP" connectors do not infringe Plaintiff's '246 patent literally or under the doctrine of equivalents as a matter of law.

### 1. *Literal Infringement*

Under the Patent Act, infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a) (Supp.1996). There are two types of infringement, literal infringement and infringement under the doctrine of equivalents.

■ Where the allegedly infringed claim is written using means-plus-function language authorized by 35 U.S.C. § 112, literal infringement occurs when the accused device performs the same function using the same or an equivalent structure as shown in the patent specification. *Serrano v. Telular Corp.,* 111 F.3d 1578, 1581–82 (1997). When evaluating the equivalence of accused structures, one of the key factors is whether persons reasonably skilled in the art would have known of the interchangeability of a structure or ingredient not contained in the patent with one that was disclosed in the patent. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ As stated, in this case the Defendant seeks a judgment declaring that its original and redesigned "CMP" connectors do not literally infringe claim one of Plaintiff's '246 patent as a matter of law. However, the parties dispute whether the Defendant's connecting "sleeves" are equivalent to Plaintiff's "compression sleeve means" even though the Defendant's sleeves are made of brass rather than plastic. The parties also dispute whether Defendant's redesigned "CMP" connector sleeve "snaps." Therefore, after drawing all reasonable inferences in favor of the Plaintiff, the Court finds an issue of fact exists as to whether the sleeves in the Defendant's original and redesigned "CMP" connector are the same as, or at least equivalent to, the "compression sleeve means" disclosed in claim one of Plaintiff's '246 patent, and the Defendant's motion for summary judgment on the issue of literal infringement must be denied.

### 2. *Infringement Under Doctrine of Equivalents*

■ The Defendant also argues that its accused products do not, as a matter of law, infringe claim one of Plaintiff's '246 patent under the doctrine of equivalents. An accused product that does not literally infringe a patent claim may nevertheless infringe a patent claim where differences between the accused product and the claimed invention are insubstantial. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* — U.S. —, —, 117 S.Ct. 1040, 1046, 137 L.Ed.2d 146 (1997). In the classic statement of the doctrine, the Supreme Court stated that an accused product infringes a claimed invention

under the doctrine of equivalents when the accused product "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Manufacturing Co, Inc.*, 339 U.S. at 608, 70 S.Ct. at 856 (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 41, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929)).

 As an initial matter, in light of the Court's finding that a genuine issue of fact exists regarding the issue of literal infringement, it would be incongruous for the Court to find that the Defendant was entitled to judgment as a matter of law under the doctrine of equivalents. Moreover, the dispute in this case centers on whether the sleeves on the Defendant's connectors create a substantially similar moisture seal in a way substantially similar to Plaintiff's "compression sleeve means." Thus, after drawing all reasonable inferences in Plaintiff's favor, the Court finds that there are issues of fact as to whether the Defendant's connector sleeves create substantially the same moisture seals as Plaintiff's claimed "compression sleeve means," and whether the Defendant's sleeves form their seals in substantially the same way. Therefore, the Court finds that the Defendant's motion for summary judgment on the issue of infringement must be denied in its entirety.

### Conclusion

After carefully considering the papers submitted, the arguments of counsel, the applicable law, and the entire file in this matter, it is hereby

ORDERED that Plaintiff's motion for leave to amend the complaint is DENIED, Plaintiff's motion for a preliminary injunction is DENIED as moot, and the Temporary Restraining Order filed November 27, 1996, as amended by Order dated January 21, 1997, is VACATED. It is further

ORDERED that Plaintiff's motion for production of documents and production of attorney Schurgin for deposition is DENIED, Defendant's motion for a *Markman* hearing is DENIED, and Defendant's motions for summary judgment are DENIED in their entirety.

The parties are directed to appear for a settlement conference on September 11, 1997 at 2:00 p.m. at the undersigned's chambers in the James M. Hanley building in Syracuse, New York. Any further scheduling will be done at that time.

IT IS SO ORDERED.